22-2275, 22-2277, 22-2278, 22-2279, 22-2281, 22-2283

# United States Court of Appeals
# for the Federal Circuit

BETEIRO, LLC,

Plaintiff-Appellant,

v.

DRAFTKINGS, INC.; POINTSBET USA, INC.; BETMGM, LLC;
HILLSIDE NEW JERSEY LLC; BETFAIR INTERACTIVE US LLC;
TSG INTERACTIVE US SERVICES LTD. CORP.; ODS TECHNOLOGIES LP;
KINDRED GROUP PLC; TRANNEL INTERNATIONAL, LTD.;
UNIBET INTERNATIONAL, LTD.; and UNIBET INTERACTIVE, INC.,

Defendants-Appellees,

*Appeals from the United States District Court for the District of New Jersey in case nos. 1:21-cv-20148-COP-SAK, 1:21-cv-20155-COP-SAK, 1:21-cv-20156-COP-SAK, 1:21-cv-20158-COP-SAK, 1:22-cv-00577-COP-SAK, and 1:22-cv-01536-COP-SAK, Judge Christine P. O'Hearn*

## OPENING BRIEF
## OF PLAINTIFF-APPELLANT

March 9, 2023

*/s/ M Scott Fuller*

Randall Garteiser
rgarteiser@ghiplaw.com
(415) 568-0553
Christopher A. Honea
chonea@ghiplaw.com
(918) 510-5375
M. Scott Fuller
sfuller@ghiplaw.com
(214) 729-6548
**GARTEISER HONEA PLLC**
119 West Ferguson Street
Tyler, Texas 75702
Main Telephone:  (415) 785-3762
Facsimile:  (415) 785-3805

*Attorneys for Plaintiff-Appellant*
BETEIRO LLC

# PATENT CLAIMS AT ISSUE

## United States Patent No. 9,965,920

ASSERTED CLAIM: 16

<u>'920 CLAIM 16:</u>

An apparatus, comprising:

a processor, wherein the processor is specially programmed to detect a posting of information regarding a sporting event for which a bet can be placed on, over, or via, the Internet or the World Wide Web or for which the bet can be placed on-line, wherein the processor detects the posting of the information regarding the sporting event, and further wherein the processor generates a notification message containing information regarding the sporting event, and further wherein the apparatus initiates a communication link on, over, or via, a communication network with a first user communication device, wherein the first user communication device is associated with an individual, and further wherein the apparatus transmits the notification message to the first user communication device via the communication link;

a video recording device, an audio recording device, or a video conferencing device, wherein the video recording device, the audio recording device, or the video conferencing device, obtains or records live video information regarding the sporting event, live audio information regarding the sporting event, or live videoconferencing information regarding the sporting event;

a receiver, wherein the receiver receives a bet message, wherein the bet message is transmitted from the first user communication device or from a second user communication device, wherein the first user communication device or the second user communication device comprises a global positioning device, wherein the global positioning device determines a position or location of the first user communication device or the second user communication device, wherein the bet message contains information regarding a bet to be placed on or regarding the sporting event and information regarding the position or location of the first user communication device or the second user communication device; and

a transmitter, wherein the transmitter transmits the live video information regarding the sporting event, the live audio information regarding the sporting event, or the live videoconferencing information regarding the sporting event, to the first user communication device, to the second user communication device, or to a third user communication device,

wherein the apparatus or the processor processes information contained in the bet message and determines whether the bet is allowed or disallowed and, if the bet is allowed, the apparatus or the processor processes information for placing the bet for or on behalf of the individual.

## United States Patent No. 10,043,341

ASSERTED CLAIM: 13

'341 CLAIM 13:

An apparatus, comprising:

a computer, wherein the computer is specially programmed for processing information for providing for a placement of a bet on or regarding a sporting event, wherein the computer further comprises:

a receiver, wherein the receiver receives a request to notify an individual regarding the sporting event for or on which the bet can be placed;

a memory, wherein the memory stores information regarding the request to notify the individual regarding the sporting event; and

a processor, wherein the processor is specially programmed to detect a posting of information regarding the sporting event and to generate a notification message regarding the sporting event, wherein the processor detects the posting of the information regarding the sporting event, and further wherein the processor generates the notification message regarding the sporting event;

wherein the computer, in response to a generating of the notification message by the processor, initiates a communication link with a first communication device, wherein the first communication device is associated with the individual, and further wherein the computer transmits the notification message to the first communication device,

wherein the computer receives a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further wherein the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device determines a position or location of the first communication device or the second communication device,

wherein the bet message contains information regarding a bet to be placed on or regarding the sporting event and information regarding the position or location of the first communication device or the second communication device at a time of a transmission of the bet message from the first communication device, or from the second communication device, to the computer,

wherein the computer determines if the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, the computer processes information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, the computer processes information for disallowing the bet.

## United States Patent No. 10,147,266

ASSERTED CLAIM: 1

'266 CLAIM 1:

An apparatus, comprising:

a computer, wherein the computer is specially programmed for processing information for providing for a placement of a bet on or regarding a gaming activity, a gambling activity, or a sporting event, wherein the computer is specially programmed to detect a posting of information regarding the gaming activity, the gambling activity, or the sporting event, and to generate a notification message regarding the gaming activity, the gambling activity, or the sporting event, wherein the computer detects the posting of the information regarding the gaming activity, the gambling activity, or the sporting event, and further wherein the computer generates the notification message regarding the gaming activity, the gambling activity, or the sporting event,

wherein, in response to a generating of the notification message, the computer initiates a communication link with a first communication device and transmits the notification message to the first communication device as an electronic transmission, or the computer transmits the notification message as an electronic mail message, wherein the electronic mail message is received by or received at a first communication device, wherein the first communication device is associated with an individual,

wherein the computer receives a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further wherein the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device determines a position or location of the first communication device or the second communication device,

wherein the bet message contains information regarding a bet to be placed on or regarding the gaming activity, the gambling activity, or the sporting event, and information regarding the position or location of the first communication device or the second communication device,

wherein the computer determines if the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, the computer processes information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, the computer processes information for disallowing the bet.

## United States Patent No. 10,255,755

ASSERTED CLAIM: 2

<u>'755 CLAIM 2:</u>

A computer-implemented method, comprising:

detecting, with or using a computer which is specially programmed for processing information for providing for a placement of a bet on or regarding a gaming activity, a gambling activity, or a sporting event, a posting of information regarding the gaming activity, the gambling activity, or the sporting event;

generating, with or using the computer, a notification message regarding the gaming activity, the gambling activity, or the sporting event;

initiating, with or using the computer, a communication link with a first communication device and transmitting the notification message to the first communication device as an electronic transmission, or transmitting, from the computer, the notification message as an electronic mail message, wherein the electronic mail message is received by or received at a first communication device, wherein the first communication device is associated with an individual;

receiving, with the computer, a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further wherein the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device determines a position or

location of the first communication device or the second communication device, and further wherein the bet message contains information regarding a bet to be placed on or regarding the gaming activity, the gambling activity, or the sporting event, and information regarding the position or location of the first communication device or the second communication device; and

determining, with or using the computer, whether the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, processing information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, processing information for disallowing the bet.

## CERTIFICATE OF INTEREST

The undersigned counsel for the Plaintiff-Appellant certifies the following, pursuant to Federal Circuit Rule 47.4:

(i)     The full name of every entity represented by me in this case is:

        Beteiro, LLC

(ii)    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

        N/A

(iii)   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the entity represented by me are:

        N/A

(iv)    The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court, are:

        **KLUGER HEALEY, LLC**
        David A. Ward

(v)     Other than the originating case number(s), the title and number of any cases known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

        None.

Date: March 9, 2023          _/s/ M. Scott Fuller_
                                M. Scott Fuller

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. xi

TABLE OF CONTENTS ....................................................................... xii

TABLE OF AUTHORITIES ............................................................... xxiii

I.    STATEMENT OF RELATED CASES ............................................ 1

II.   STATEMENT OF JURISDICTION ............................................... 2

III.  STATEMENT OF THE ISSUES .................................................... 3

IV.   STATEMENT OF THE CASE AND FACTS .................................. 4

      A.    THE ASSERTED CLAIMS AND
            ACCUSED INSTRUMENTALITIES ......................................... 4

      B.    DEFENDANTS' MOTIONS AND THE
            DISTRICT COURT'S ORDERS ............................................... 6

            1.    THE OPERATIVE BetMGM ORDER ............................. 7

V.    SUMMARY OF THE ARGUMENT ............................................... 8

VI.   ARGUMENT ............................................................................... 9

      A.    LEGAL PRINCIPLES AND STANDARD OF REVIEW ............... 9

      B.    THE DISTRICT COURT ERRED IN ITS STEP ONE ANALYSIS ............ 13

            1.    THE DISTRICT COURT ERRONEOUSLY
                  COMPARED CLAIMS ............................................... 16

            2.    THE DISTRICT COURT ERRONEOUSLY
                  ANALOGIZED THE CLAIMS ..................................... 22

C.    THE DISTRICT COURT ERRED IN ITS STEP TWO ANALYSIS ............24

1.    SO-CALLED CONVENTIONALITY
AND GENERICNESS ....................................................25

2.    THE *CELLSPIN* OPINION AND THE
OPERATIVE COMPLAINT ........................................30

3.    DEFERENCE TO UNITED STATES
PATENT EXAMINER................................................43

VII.    CONCLUSION AND PRAYER FOR RELIEF....................................50

# TABLE OF AUTHORITIES

*Alice Corp. v. CLS Bank Int'l*,
　　573 U.S. 208 (2014)............................................................ *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
　　841 F.3d 1288 (Fed. Cir. 2016) .................................... 11, 26, 37

*Ancora Techs., Inc. v. HTC America, Inc.*,
　　908 F.3d 1343 (Fed. Cir. 2018) ............................................. 21

*Barrett v. Belleque*,
　　544 F.3d 1060 (9th Cir. 2008) .............................................. 10

*Bascom Global Intern. Solns. v. AT&T Mobility*,
　　827 F.3d 1341 (Fed. Cir. 2016) ............................ 13, 18, 26, 30

*Berkheimer v. HP Inc.*,
　　881 F.3d 1360 (Fed. Cir. 2018) ............................ 10, 11, 36, 38

*Bilski v. Kappos*,
　　561 U.S. 593 (2010).............................................................. 44

*CardioNet LLC v. InfoBionic, Inc.*,
　　2021 WL 5024388 (Fed. Cir. 2021) ...................................... 44

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
　　927 F.3d 1306 (Fed. Cir. 2019) ..................................... *passim*

*CG Technology Development, LLC v. Bwin.party (USA), Inc.*,
　　2016 WL 6089696 (D. Nev. 2016) ................................... 17, 18

*CG Technology Development, LLC v. FanDuel, Inc.*,
　　442 F. Supp. 3d 840 (D. Del. 2020) ................................. 17, 19

*CyberSource Corp. v. Retail Decisions, Inc.*,
　　654 F.3d 1366 (Fed. Cir. 2011) ............................................ 18

*Data Engine v. Google*,
　　906 F.3d 999 (Fed. Cir. 2018) .............................................. 21

*DDR Holdings, LLC v. Hotels.com, L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014) ........................................................ 26, 44

*Diamond v. Diehr,*
  450 U.S. 175 (1981).......................................................................... 10, 25

*Eclipse IP LLC v. McKinley Equipment Corp.,*
  2014 WL 4407592 (C.D. Cal. 2014) ...................................................... 45

*Enfish LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016) .............................................................. 16

*Finjan v. Blue Coat Systems,*
  879 F.3d 1299 (Fed. Cir. 2018) .............................................................. 21

*Front Row Tech. LLC v. NBA Media Ventures, LLC,*
  204 F.Supp.3d 1190 (D.N.M.)................................................................ 20

*Hawk Tech. Sys., LLC v. Castle Retail, LLC,*
  2023 WL 2054379 (Fed. Cir., Feb. 17, 2023) ....................................... 8, 9

*ILife Techs., Inc. v. Nintendo of America, Inc.,*
  2021 WL 117027 (Fed. Cir. Jan. 13, 2021)............................................. 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012)...................................................................... 10, 12, 30

*Murphy v. National Collegiate Athletics Association,*
  138 S.Ct. 1461 (2018).............................................................................. 41

*NEXRF Corp. v. Playtika Ltd.,*
  547 F.Supp.3d 977 (D. Nev. 2021) .................................................... 19, 20

*PPS Data LLC v. Jack Henry & Assoc., Inc.,*
  404 F.Supp.3d 1021 (E.D. Tex. 2019) ................................ 11, 36, 37, 38

*Skillz Platform Inc. v. Aviagames Inc.,*
  2022 WL 783338 (N.D. Cal. 2022)......................................................... 49

*Solutran, Inc. v. Elavon, Inc.,*
  931 F.3d 1161 (Fed. Cir. 2019) ................................................. 9, 11, 44

*SRI Int'l, Inc. v. Cisco Systems, Inc.,*
    930 F.3d 1295 (Fed. Cir. 2019) ......................................................... 21, 37

*Stone Basket Innov. v. Cook Medical,*
    892 F.3d 1175 (Fed. Cir. 2018) ............................................................... 47

*TecSec, Inc. v. Adobe, Inc.,*
978 F.3d 1278 (Fed. Cir. 2020)......................................................... 12, 14, 15, 21

*Tobii Tech. v., Inc. v. Weinblatt,*
    2021 WL 3879132 (D.N.J. Aug. 30, 2021) ......................................... 8, 43

*Vineyard Investigations v. E&J Gallo Winery,*
    2021 WL 22497 (E.D. Cal. Jan. 4, 2021) ........................................... 12, 30

# I.    STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), counsel for Plaintiff-Appellant, Beteiro LLC ("Beteiro"), hereby states that the civil cases underlying these consolidated appeals have not been previously appealed to this Court.

Pursuant to Federal Circuit Rule 47.5(b), counsel for Beteiro further states that the following cases pending in the following district courts will directly affect or be directly affected by this court's decision in the pending appeal:

1.    *Beteiro LLC v. Hard Rock Tristate*; 1:21-cv-20157 (D.N.J.)

2.    *Beteiro LLC v. PlayUp Ltd.*; 6:21-cv-01150 (W.D. Tex.)

3.    *Entain, et al. v. Beteiro LLC*; PTAB-IPR 2023-0092

4.    *Entain, et al. v. Beteiro LLC*; PTAB-IPR 2023-0093

5.    *Entain, et al. v. Beteiro LLC*; PTAB-IPR 2023-0094

6.    *Entain, et al. v. Beteiro LLC*; PTAB-IPR 2023-0095

## II.    STATEMENT OF JURISDICTION

Beteiro brings these consolidated Appeals from the District Court, including in accordance with 28 U.S.C. §1295(a)(1).  Fed.R.App.P. 4(a)(4)(B)(i).  Each of the consolidated, pending actions arose under the United States Patent Laws and jurisdiction, including in accordance with, and pursuant to, 28 U.S.C. §§1331, 1338(a) and 1400(b).

Beteiro takes each of these appeals from the final judgments entered in the respective cases by the District Court, based upon the Court's clearly erroneous grant of the Motions to Dismiss in favor of each of the Defendant-Appellees, which amounted to clear error.[1]

These orders are final because appealable orders amounting to final judgment were entered on September 7, 2022.  Beteiro timely filed Notices of Appeal[2] within thirty days of entry of final judgment in accordance with 28 U.S.C. §2107, Fed.R.App.P. 4(a), and Fed.Cir.R. 4.

---

[1] More specifically: (i) the District Court's September 7, 2022 Order in *Beteiro, LLC v. BetMGM, LLC,* No. 21-20156, Dkt. 29, styled "ORDER", including the Court's Opinion at Dkt. 27 [Appx0001-0021 and Appx0022]; (ii) *Beteiro, LLC v. DraftKings, Inc.,* No. 21-20148, Dkt. 25, Order [Appx0023-0024]; (iii) *Beteiro, LLC v. PointsBet USA, Inc.,* No. 21-20155, Dkt. 23, Order [Appx0025-0026]; (iv) *Beteiro, LLC v. Betfair Interactive US, LLC,* No. 22-00577, Dkt. 14, Order [Appx0027-0028]; (v) *Beteiro, LLC v. Hillside N.J. LLC,* No. 21-20158, Dkt. 25, Order [Appx0029-0030]; (vi) *Beteiro, LLC v. Kindred Grp. plc,* No. 22-01536, Dkt. 23, Order [Appx0031-0032].
[2] Notices of Appeal, *see* Appx0033-0056.

### III.  STATEMENT OF THE ISSUES

1.     Whether the District Court erred in granting Defendant-Appellees' individual motions to dismiss by erroneously finding the Asserted Claims to be directed to patent ineligible subject matter under 35 U.S.C. § 101.

2.     Whether the District Court erred in finding that the Asserted Claims are drawn to an abstract idea.

3.     Whether the District Court erred in finding that the Asserted Claims lack any inventive concept sufficient to transform the alleged abstract idea into a patent-eligible application.

## IV.    STATEMENT OF THE CASE AND FACTS

### A.    THE ASSERTED CLAIMS AND ACCUSED INSTRUMENTALITIES

The Asserted Patents each relate to specific systems or methods for managing a mobile wagering platform while ensuring geographical compliance.  Here, Beteiro asserts the following claims: Claim 2 of United States Patent No. 10,255,755; Claim 13 of United States Patent No. 10,043,341; Claim 1 of United States Patent No. 10,147,266; and Claim 16 of United States Patent No. 9,965,920.

The Defendants in these matters each operate infringing wagering platforms which broadly include physical casino sites operated in association with mobile wagering applications.   A representative Accused Instrumentality of Defendant BetMGM is illustrated below:







How do you identify my location?

As per New Jersey regulations, it is mandatory that you be located within the state of New Jersey to be able to participate in any of our games and/or to deposit.

We use several technical solutions to verify your location including IP address and Wi-Fi signal triangulation.

## B.    DEFENDANTS' MOTIONS AND THE DISTRICT COURT'S ORDERS

Defendant DraftKings filed its Motion to Dismiss on February 9, 2022.  *See* Appx0434-0476.  Defendant PointsBet likewise filed its Motion to Dismiss on February 9, 2022.  *See* Appx0477-0509.  Defendant Hillside also filed its Motion to Dismiss on February 9, 2022.  *See* Appx0510-0539.  Thereafter, Defendant BetMGM filed its Motion to Dismiss on February 23, 2022.  *See* Appx0562-00610.  Defendant Betfair filed a joinder in MGM's Motion to Dismiss on April 11, 2022.  *See* Appx0558-0561.  Finally, Defendant Kindred filed its Motion to Dismiss on July 12, 2022.  *See* Appx0540-0557.  Each of Defendants' Motions offered essentially identical arguments in relation to eligibility, with certain Defendants adding arguments relating to willfulness and/or jurisdiction.

On September 7, 2022, and without conducting a hearing, the District Court granted BetMGM's Motion to Dismiss.  Appx0001-0021.  On the same day, the District Court entered Orders granting dismissal in each of the other cases, based on the same reasoning as set forth in the BetMGM Order.  *See* Appx0031-0032 (Kindred); Appx0027-0028 (Betfair); Appx0023-0024 (DraftKings); Appx0025-

0026 (PointsBet); and Appx0029-0030 (Hillside).  In view of the foregoing, and unless otherwise specifically noted, the discussions presented in this Brief shall be directed to the BetMGM Order and its underlying Complaint and briefing.

### 1.    THE OPERATIVE BETMGM ORDER

As noted, the District Court's faulty eligibility analysis is set forth in the BetMGM Order.  Appx0001-0021 (hereafter, the "Order").  Briefly, the Order comprises 13 pages of discussion in which the District Court:

(i)    finds Claim 2 of the '755 Patent to be representative of all Asserted Claims [Appx0011];

(ii)    adopts Defendant's argument that the Asserted Claims are directed to: "an apparatus or method for exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located" [Appx0013];

(iii)    finds the Asserted Claims to be drawn to mere "fundamental economic practices" and "methods of organizing human activity" [Appx0016];

(iv)    finds the Asserted Claims to be drawn to conventional business practices carried out by conventional computers [Appx0018];

(v)    rejects the numerous allegations in the Complaint which establish unconventionality as purportedly "lacking specificity and detail" [Appx0019]; and

(vi)    rejects the Patent Examiner's statements concerning subject matter eligibility [Appx0020].

## V.    SUMMARY OF THE ARGUMENT

As the Court is well aware, patent claims are presumptively novel and non-obvious, presumptively drawn to patent-eligible subject matter, and presumptively properly examined and allowed by the Examiner(s) at the United States Patent Office. *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019). Moreover, at the pleading stage, the District Court is required by law not only to accept all factual allegations in the operative Complaint as true, but also to draw all reasonable inferences in the patentee's favor. *E.g., Hawk Tech. Sys., LLC v. Castle Retail, LLC,* 2023 WL 2054379 at *4 (Fed. Cir., Feb. 17, 2023) (Federal Circuit applies applicable law of the regional circuit in reviewing 12(b)(6) motions to dismiss); *Tobii Tech. v., Inc. v. Weinblatt,* 2021 WL 3879132 at *2 (D.N.J. Aug. 30, 2021). Here, however, the District Court largely ignored the well-pled facts in the Complaint, and failed to draw *any* inferences in favor of Plaintiff. The District Court's errors are plain, given that the operative Complaint contains a multitude of *unrebutted* specific and plausible statements of fact establishing the non-abstract nature of the Asserted Claims.

First, the Asserted Claims are not directed to any abstract idea, and certainly not the one identified by the District Court. Merely stating that the Asserted Claims are "directed to" the idea of "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located" is improper, inasmuch as

the District Court failed to directly tether such statement to the actual claim language. *See Solutran v. Elavon,* 931 F.3d 1161, 1167-68 (Fed. Cir. 2019).

Second, and even assuming the Asserted Claims can be properly characterized as being directed to an abstract idea, there are multitude of inventive concepts identified in the operative Complaint, along with an abundance of statements of uncontroverted fact which illustrate the unconventionality of the inventions as claimed. The District Court utterly failed to properly attribute such well-pled statements, and thereby erroneously granted Defendants' Motions.

## VI.  ARGUMENT

### A.  LEGAL PRINCIPLES AND STANDARD OF REVIEW

As the Court is well aware, the Asserted Claims of the patents are presumptively novel and non-obvious, presumptively drawn to patent-eligible subject matter, and presumptively properly examined and allowed by the Examiner(s) at the United States Patent Office. *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019).

This Court reviews orders granting dismissal under Rule 12(b)(6) in accordance with the law of the applicable regional circuit. *E.g., Hawk Tech. Sys., LLC v. Castle Retail, LLC,* 2023 WL 2054379 at *4 (Fed. Cir., Feb. 17, 2023). In the Ninth Circuit, such dismissals are reviewed *de novo*, accepting all factual

allegations as true and drawing all reasonable inferences in the plaintiff's favor. *See, e.g., Barrett v. Belleque*, 544 F.3d 1060, 1061 (9th Cir. 2008).

Patent eligibility under 35 U.S.C. § 101 is an issue of law that may contain underlying issues of fact. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). This Court reviews the District Court's ultimate conclusion on patent eligibility *de novo*. *Id*. To determine whether a patent claims eligible subject matter, this Court follows the Supreme Court's familiar two-step framework. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–73 (2012). First, the Court determines whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 573 U.S. at 217. If not, then the claims are patent-eligible and the inquiry is over. If so, however, the Court proceeds to the second step in order to determine whether the claims nonetheless include an "inventive concept" sufficient to transform the nature of the claim into a patent-eligible application. *Id.*

Eligibility of individual claims must be assessed on the whole as an ordered combination; "It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis." *Diamond v. Diehr*, 450 U.S. 175 (1981) (further holding: a new combination "may be patentable even though all the constituents of the combination were well known and in common use before the combination was made").

Whether claims recite an "inventive concept," or something more than "well-understood, routine, conventional activities previously known to the industry," may turn on underlying questions of fact. *Cellspin,* 927 F.3d at 1315.

This Court fully credits the written specification's disclosure of the state of the art, as well as its recitation of improvements over the art, as sufficient to create fact issues precluding summary judgment, as long as such are captured in the claims. *See, e.g., Berkheimer v. HP Inc.,* 881 F.3d 1360, 1369 (Fed. Cir. 2018); *see also PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1040-41 (E.D. Tex. 2019) (collecting cases) ("The Federal Circuit routinely relies on factual assertions in patent specifications not only as *some* evidence, but *conclusive* evidence of inventiveness") (emphasis added).

Any statement of a purported "abstract idea" must be "directly tethered to the claim language" and must track the claim language to correctly capture what the patent asserts to be the focus of the claimed advance over the prior art. *See Solutran v. Elavon,* 931 F.3d 1161, 1167-68 (Fed. Cir. 2019).

Claims include an inventive concept when they provide a technological solution to a technological problem. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016).

With respect to *Alice* Step One, the notion that the claims at issue recite mere "conventional components" is entirely irrelevant. *See ILife Techs., Inc. v. Nintendo*

*of America, Inc.,* 2021 WL 117027 at *2 (Fed. Cir. Jan. 13, 2021) ("the district court erred to the extent that it incorporated conventionality of claim elements at step one"; and "[a] claim is not directed to an abstract idea simply because it uses conventional technology"). At the Step One phase, the proper approach is to determine what the claims at issue are "directed to" by evaluating what the patent itself asserts as the "focus" of the claimed advance over the prior art. *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020). Such an analysis must remain true to the language of the claims themselves in light of the specification, and must be careful to avoid overgeneralizing the claims. *Id.* (citing cases). Of course, claims directed to software improvements can be patent-eligible when directed to non-abstract improvements to the functionality of a computer or network platform itself. *Id.* at 1293. In such situations, it is proper to make two inquiries: (i) is the focus of the claimed advance to a solution of a problem specifically arising in the realm of computers; and (ii) is the claim properly characterized as identifying a "specific" improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function. *Id.* (collecting cases).

The incorporation of ordinary hardware components in a patent claim is not dispositive at Step Two. *See, e.g., Vineyard Investigations v. E&J Gallo Winery,* 2021 WL 22497 at *6 (E.D. Cal. Jan. 4, 2021) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 71 (2012)) ("However, the Supreme Court has

also recognized that because 'all inventions at some level embody, use, reflect, rest upon, or apply ... abstract ideas,' this exclusionary principle cannot be so broad as to make something un-patentable simply because it involves, at some level, an abstract concept"); *Bascom Global Intern. Solns. V. AT&T Mobility,* 827 F.3d 1341, 1350 (Fed. Cir. 2016) (an inventive concept can be found in the non-conventional and non-generic arrangement even of known, conventional pieces).

Other legal principles applicable to the District Court's erroneous grant of Defendants' Motions to Dismiss are noted herein, as applicable.

## B.    THE DISTRICT COURT ERRED IN ITS STEP ONE ANALYSIS

The threshold issue addressed by the District Court in its erroneous Order is whether the Asserted Claims are "directed to" an abstract idea.  Because the District Court erred in this regard, and because the Asserted Claims are *not* directed to any abstract idea, the Order should be reversed.

The Order concludes that the Asserted Claims are directed to a purportedly abstract idea, yet fails to identify the so-called "idea" it believes properly defines the inventions as claimed.  The closest thing to a recital of a particular "abstract idea" comes when the Order credits Defendant's "succinct summarization" of the claims as describing "an apparatus or method for exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located."  Appx0013.

-13-

Assuming this is the "abstract idea" the District Court believes the Asserted Claims are directed to, there is an absence of proper analysis under Step One.

At the Step One phase, the proper approach is to determine what the Asserted Claims are "directed to" by evaluating what the patent itself asserts as the "focus" of the claimed advance over the prior art. *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020). Such an analysis must remain true to the language of the claims themselves in light of the specification, and must be careful to avoid overgeneralizing the claims. *Id.* (citing cases). Of course, claims directed to software improvements can be patent-eligible when directed to non-abstract improvements to the functionality of a computer or network platform itself. *Id.* at 1293. In such situations, it is proper to make two inquiries: (i) is the focus of the claimed advance to a solution of a problem specifically arising in the realm of computers; and (ii) is the claim properly characterized as identifying a "specific" improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function. *Id.* (collecting cases). Because the District Court failed to conduct a proper Step One inquiry, its Order arrives at an erroneous conclusion.

The inventions of the Asserted Claims are described in the specification as "focusing" on advancing over the prior art by providing a means for gaming providers to offer gamblers access to activities they would not otherwise have access

-14-

to. *See* Appx0385 ('920 Patent) at 1:37-58. The inventions as claimed overcome this challenge by first incorporating user communication devices. *Id.* at 1:29-33; 1:62-67. Each Asserted Claim specifically recites such a device. *See, e.g.,* Appx0258-0259 ('341 Patent) at Claim 13 (reciting: "wherein the first communication device is associated with the individual"). The inventions as claimed further overcome this challenge by specifically implementing "bet messages" which contain not only information relating to the proposed wager, but also temporal location information with respect to the "communication device" from which the message originates. *See, e.g., id.* (reciting: "wherein the bet message contains information regarding a bet to be placed on or regarding the sporting event and information regarding the position or location of the first communication device … at a time of a transmission of the bet message from the first communication device"). Finally, the inventions provide legally compliant access to otherwise inaccessible wagering platforms by using the location information of the bet message. *See, e.g., id.* (reciting: "wherein the computer determines if the bet is allowed or disallowed using the information regarding the position or location of the first communication device"); *see also* Appx0392 ('920 Patent) at 16:14-21; Appx0397 at 26:14-18; and Appx0406 at 44:37-58 (each discussing how the inventions provide a means for ensuring compliance with local laws). The District Court, had it conducted a proper Step One analysis in accordance with *TecSec,* would

have properly identified the "focus" of the invention as: "*providing remote yet legally compliant access to wagering platforms via user communication devices and the transmission of bet messages containing bet information and position information of the device*." Such a recitation of the focus remains true to the Asserted Claims without overgeneralizing, and stands in contrast to the erroneous and overly broad "summarization" of the Asserted Claims relied upon by the District Court in its Order.

Because the "focus" as properly defined above is directed to non-abstract improvements in the functionality of computers, the Asserted Claims are not directed to abstract ideas, and are patent-eligible. This is so, at least because the focus of the claimed advance is to a solution of a problem specifically arising in the realm of computers. Again, these Asserted Claims are drawn to the provision of remote, yet legally compliant, access to wagering platforms using specific messaging protocols and safeguards. Such is non-abstract. *Enfish LLC v. Microsoft Corp.,* 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("a substantial class of claims are *not* directed to a patent-ineligible concept," and thus "the first step of the *Alice* inquiry is a meaningful one").

## 1.    THE DISTRICT COURT ERRONEOUSLY COMPARED CLAIMS

The District Court's erroneous Order relies heavily on generalized and superficial comparisons of the Asserted Claims to other claims which have otherwise

been held as patent ineligible in other cases. These comparisons, however, do not dictate the outcome reached by the District Court.

First, the claims in *CG Technology* were directed simply to a process for determining the location of a device and using a lookup table to render specific content to that device. *CG Technology Development, LLC v. FanDuel, Inc.,* 442 F. Supp. 3d 840, 843-44 (D. Del. 2020). Such claims did not solve any problem arising in the online context, and did not include specific structural limitations such as specially programmed processors, notification messages, bet messages, or decision-making algorithms for placing a specific wager. Moreover, as the opinion in *CG Technology* points out, substantially similar claims had been previously found to be patent eligible and non-abstract by the District of Nevada. *See CG Technology Development, LLC v. Bwin.party (USA), Inc.,* 2016 WL 6089696 at \*4-5 (D. Nev. 2016) (holding: "Claim 19 does not monopolize purely abstract concepts or all of their applications. Even if the act of locating a remote object could be considered an abstract idea – and it probably can't be – Claim 19 does not cover all of its applications, but only the limited application of determining the location of a mobile gaming device using a computer. The computer system in Claim 19 is not applied purely in its capacity as a generic computing device, *i.e.*, as a substitute for a human mind, but at least in part as a communication tool"). Still further, the District Court in Nevada doubled-down on its findings relating to eligibility when it denied the

defendant's motion for reconsideration. There, the District Court emphasized the fact that one primary test for abstractness lies in the ability (or inability) of a human to perform the claimed tasks in the mind. *CG Technology,* 2016 WL at *3 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011)). Of course, the claims in *CG Technology* – just as the Asserted Claims here – relied upon geolocation as an *input* and not as a result:

> The claim does not instruct the practitioner to conduct some abstract calculation and then use the result to geolocate a device. To the contrary, the result of the geolocation step here is utilized as an *input* for at least some of the abstract computer-based activity.

*CG Technology,* 2016 WL at *4 (emphasis in original).

In view of the foregoing, it is clear that the Asserted Claims are patent eligible, just as those at issue in *CG Technology* were. *See also Bascom Global Internet Services, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350-51 (Fed. Cir. 2016) (finding patent eligible claims which did not preempt all ways of achieving the objective, comprised more than a mere drafting effort designed to monopolize the abstract idea, and improved an existing technological process). Again, *CG Tech* does not dictate the result reached by the District Court. Indeed, quite the opposite: Certain system claims in *CG Tech* were actually deemed patent-eligible by the District of Nevada *precisely because the claims at issue determined the physical location of a mobile gaming device. See CG Tech Dev., LLC v. Bwin.party (USA),*

-18-

*Inc.,* 2016 WL 6089696 at *4-5 (D. Nev. 2016) (denying motion to dismiss with respect to four patents because each included claims in which the determination of the physical location of a remote device was a recited limitation). The Delaware Court later found *different* method claims were not patent-eligible because they were drawn to a mere method for "organizing human activity" by configuring a game based upon the location of the mobile device, and further because there was no inventive concept. *See CG Tech. Dev., LLC v. FanDuel, Inc.,* 442 F.Supp.3d 840 (D. Del. 2020). Here, however, and as discussed in detail *infra*, there can be no dispute that the use of geo-location as an integral aspect of a compliant wagering platform using bet messages from remote user devices was unconventional and non-routine as of May 2002.

Likewise, the claims in *NEXRF* are inapposite to those at issue here. As argued by the District Court in its Order, claims which purportedly "incentivized gambling tailored to a user's location" are analogous to the Asserted Claims here. The claim under consideration in *NEXRF*, however, bear zero relation to the Asserted Claims. Rather, the claim considered in *NEXRF* was Claim 1 of United States Patent No. 9,373,116, which only incidentally referenced the acquisition of location information, but the claim itself did *nothing* with it. *See NEXRF Corp. v. Playtika Ltd.,* 547 F.Supp.3d 977, 984 (D. Nev. 2021). Accordingly, the *NEXRF* claim was nothing more than a slot machine game, and not a meaningful and specific

-19-

protocol for providing legally compliant remote wagers. Once again, the point made by the District Court in its erroneous Order is generally that patent claims combining gambling activities with generic technology are commonly deemed patent-ineligible. In *NEXRF*, however, the claims were merely directed to incentivized gambling, which the district court there viewed as the equivalent to targeted marketing. *See NEXRF Corp. v. Playtika Ltd.,* 547 F.Supp.3d 977, 992 (D. Nev. 2021). The only similarity between the claims in *NEXRF* and the instant claims is that they relate to gambling. There was no indication in *NEXRF* that the inventions were directed to a technological improvement, whereas the Complaint here specifically identifies a number of specific improvements captured in the Asserted Claims. *See, e.g.,* Appx0622-0623 at ¶ 31 (citing '920 Patent [Appx0385-0388] at 2:5-7:58). Again, as of the Date of Invention, and as pled with specificity by the Plaintiff in its First Amended Complaint, wagering platforms were not capable of providing legally compliant remote wagering, as such was not even legalized in the United States until several years later. *See* Appx0616-0617 at ¶ 16. For these reasons, the District Court's reliance on *NEXRF* is misplaced and erroneous.

Finally, the District Court's reliance on *Front Row Tech.* is misplaced, inasmuch as the claims at issue there were directed to sending content to an individual based on location. *Front Row Tech. LLC v. NBA Media Ventures, LLC,* 204 F.Supp.3d 1190, 1265-66 (D.N.M.). Here, by contrast, the Asserted Claims are

directed to more than simply restricting content based on location. Rather, as noted *supra*, the Asserted Claims are directed to a meaningful and specific protocol for providing legally compliant remote wagers.

To the extent comparisons are appropriate here, the District Court erred in failing to properly analyze the Asserted Claims as measured against those deemed patent eligible in, for example, *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278 (Fed. Cir. 2020). The claims in *TecSec* provided a specific solution for computer data networks and required specific features like "accessing an 'object-oriented key manager' and specified uses of a 'label' as well as encryption for the access management." *TecSec,* 978 F.3d at 1295-96. The Asserted Claims similarly provide a specific solution to an online-only problem (namely, remote wagering geographical compliance) and include specific features such as geo-located user communication devices and unconventional bet messages.

Beyond *TecSec*, the Asserted Claims here should be deemed eligible in view of at least *SRI Int'l, Inc. v. Cisco Systems, Inc.,* 930 F.3d 1295, 1303 (Fed. Cir. 2019) (solving a specific technological problem); *Ancora Techs., Inc. v. HTC America, Inc.,* 908 F.3d 1343, 1345, 1348 (Fed. Cir. 2018) (using unorthodox computer memory storage location); *Data Engine v. Google,* 906 F.3d 999, 1007-1008 (Fed. Cir. 2018) (method of navigating spreadsheets); and *Finjan v. Blue Coat Systems,* 879 F.3d 1299, 1304-05 (Fed. Cir. 2018) (generating specific profile to identify

suspicious code).  As in each of those cases, the Asserted Claims here are specifically drawn to improving the functionality of computer wagering systems by incorporating geo-located user communication devices, and further by implementing unconventional bet messages.  Although all of these pertinent authorities were specifically cited in support of Plaintiff's positions below, the District Court's Order fails to even address any of them.  Instead, the Order erroneously seeks out cases in support of its predetermined result.

## 2.    THE DISTRICT COURT ERRONEOUSLY ANALOGIZED THE CLAIMS

The District Court further erred in its assessment that the inventions of the Asserted Claims simply recite traditional face-to-face wagers as performed by a computer.  In the process, the District Court incorrectly analogized the Asserted Claims to the Stateline Hotel & Casino and to the modern prohibition against so-called "messenger betting."  *See* Appx0014-0016.  The District Court erred.

The solutions captured in the Asserted Claims is not at all analogous to the brick-and-mortar physical wagering locations discussed by the District Court. Indeed, the very point of these inventions is to *overcome* the restrictive limitations inherent in face-to-face wagering.  *See* Appx0386 at 3:6-19 (explaining how the invention allows for remote wagering via a user communication device).  Moreover, the central role of the specially programmed processor of the Asserted Claims plainly implicates and requires the specific use of a computer.  *See, e.g.,* Appx0258-

0259 at Claim 13. The Stateline Casino, by its very nature as a face-to-face environment, has no need for "notification messages," "communication links," "bet messages," "communication devices," or "processors" for "location information" from a "global positioning device." *See, e.g.,* Appx0432-0433 at Claim 16.

To the extent the District Court compares the inventions of the Asserted Claims to the longstanding fact that certain jurisdictions allow gambling while others do not, such "comparisons" miss the point entirely. The fact that a gambling provider has always had to ensure compliance with local laws by requiring the wagerer to be physically present at the brick-and-mortar facility does not negate the inventiveness of the Asserted Claims. Indeed, the very same scenario exists even today in the "real world" live-wagering context of a physical casino. But that is beside the point, and illustrates the unconventional scope of the claimed inventions, which allow for legally compliant mobile wagering beyond the confines of a physical structure. This is the complete opposite of the traditional in-person wagering scenario, and (as discussed at length *infra*) the concepts captured by the Asserted Claims were far from conventional in May of 2002.

Further, the notion of incorporating geo-located user communication devices as a means of expanding the reach of wagering platforms beyond their physical brick-and-mortar facilities, while still maintaining localized legal compliance, is plainly not a "longstanding fundamental principle" in the same manner as simply

-23-

"using location information" as in the cases cited and relied upon by the District Court. In sum, the District Court's overly-abstract statement of the underlying "idea" completely and erroneously ignores the limiting aspects of at least the "user communication device" and the "bet message" elements of the Asserted Claims, not to mention the specially programmed processor and the use of location information in allowing a remotely-placed wager to proceed (or not).

The District Court erred in holding that the Asserted Claims are directed to an abstract idea, and the erroneous Order should be reversed.

## C.    THE DISTRICT COURT ERRED IN ITS STEP TWO ANALYSIS

Even assuming the Asserted Claims are directed to an abstract idea, they each nevertheless capture inventive concepts sufficient to transform the nature of the claims beyond the mere practice of any such abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Intern.,* 573 U.S. 208, 217-18 (2014). The District Court therefore erred in finding the Asserted Claims to be drawn to ineligible subject matter, and its faulty "analysis" under Step Two is woefully inadequate.

The District Court based its erroneous conclusion under Step Two on three faulty findings: (i) the claims purportedly describe mere conventional business practices carried out by conventional computer components [Appx0017-0018]; (ii) an "analysis" in view of this Court's *Cellspin* opinion [Appx0018-0019]; and (iii) a rejection of the Patent Examiner's findings during prosecution [Appx0019-0020].

These errors are addressed in turn *infra*.

### 1.    SO-CALLED CONVENTIONALITY AND GENERICNESS

First, the District Court erred in concluding, without any meaningful analysis, that the Asserted Claims "simply describe a conventional business practice . . . although executed instead by generic computer components." Appx0018. As discussed *supra*, there is no such longstanding business practice analogous to the inventions as claimed. Again, traditional face-to-face wagering is not burdened with the same technological compliance issues plaguing modern online remote wagering platforms. In any event, claims must be assessed on the whole as an ordered combination; "It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis." *Diamond v. Diehr*, 450 U.S. 175 (1981) (further holding: a new combination "may be patentable even though all the constituents of the combination were well known and in common use before the combination was made"). Here, just as in the *Cellspin* case (as discussed more fully *infra*), the Complaint contains a multitude of *unrebutted* specific and plausible statements of fact establishing the non-abstract nature of the Asserted Claims.

By way of example, the inventions as claimed overcame many deficiencies in the art as of the Date of Invention. Among them was the obvious inability of casino operators to broaden their wagering client base beyond the physical walls of their

brick-and-mortar venues. In this regard, the Complaint states as follows:

> [T]he claims of the Asserted Patents recite apparatuses and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers. The claims of the Asserted Patents provide a basis for legally compliant remote wagering, increased accessibility to wagering platforms, increased opportunity for wagering providers, increased accessibility to wagering information to wagerers, reduced fraud, and more secure transactions among wagering providers and wagerers. *See, e.g.,* Appx0385-0388 at 2:5-7:58.

*See* Appx0622-0623 at ¶ 31.

Again, and as noted *supra*, these factual assertions must be taken as true, and are derived directly from the intrinsic record. The foregoing reiterates the fact that the Asserted Claims are drawn to inventions which overcome the routine and conventional approach of the time, including because the inventions overcome the traditional limitations of "in-person" wagering by providing a technological solution to the Internet-centric problem created by online wagering. Such inventions satisfy the threshold requirement of 35 U.S.C. § 101 and are plainly patent eligible. *See Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1258-59 (Fed. Cir. 2014); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1301-02 (Fed. Cir. 2016). As such, the District Court's erroneous Order should be reversed.

Still further, the Complaint alleges that, as of the Date of Invention in May 2002:

[T]he mobile gaming industry was essentially non-existent. The first mobile gaming venture to launch internationally did not arise until 2003 in the United Kingdom, and that in the form of an elementary interactive instant win game. *See, e.g.,* https://www.gamblingcommission.gov.uk/for-the-public/National-Lottery/About-the -National-Lottery.aspx. The concept of geolocation restrictions on such gaming platforms was not routine as of the priority date, and did not become so until many years thereafter. Indeed, it was not until 2006 that the Nevada Gaming Control Board first cleared the way for wireless gambling in the United States. Even at that time, the primary concern was over data security and identity controls, not geolocation *See* https://www.nytimes.com/2006/05/03/technology/techspecial3/03 gamble.html?smid=url-share.

*See* Appx0616-0617 at ¶ 16.

While the District Court generally ignores the specific factual allegations of the Complaint, the facts as pled are undeniably relevant to the presence of inventive concepts captured in the Asserted Claims. The very fact that the industry did not recognize and adopt the patented solution until *after* its disclosure by Plaintiff is compelling evidence of unconventionality as of 2002. These specific factual allegations in the Complaint define the state of the art as of the Date of Invention and provide a basis in fact to conclude that the Asserted Claims are indeed patent-eligible. *See Cellspin,* 927 F.3d at 1315 (an "inventive concept" is one which amounts to "something more than well-understood, routine, [and] conventional activities previously known to the industry"). The distinction over the prior art approach is plainly captured in the Asserted Claims, inasmuch as Asserted Claim 13

of the '341 Patent (for example) recites: "…the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device *determines a position or location of the first communication device or the second communication device*, wherein the *bet message* contains information regarding a bet to be placed on or regarding the sporting event *and information regarding the position or location* of the first communication device or the second communication device *at a time of a transmission* of the bet message from the first communication device, or from the second communication device, to the computer, [and] wherein the computer determines if the bet is allowed or disallowed *using the information regarding the position or location* of the first communication device or the second communication device." Appx0258-0259 at Claim 13 (emphasis added). Indeed, just as in *Cellspin,* the Complaint here does significantly more than just label certain aspects as "inventive" – rather, the Complaint sets out evidence (*see* Appx0616-0617 at ¶ 16) suggesting that the claimed approach was in fact unconventional. *Cellspin,* 927 F.3d at 1318-19. Again, the Asserted Claims are patent-eligible and the District Court's erroneous Order should be reversed.

Still further, the District Court suggests that the Asserted Claims are nothing more than a collection of standard hardware components. The District Court is incorrect, inasmuch as it ignores the meaningful limitations of the claims in favor of

an overgeneralized abstraction.  By way of example, independent Claim 13 of the '341 Patent recites an unconventional architecture centered around a specially programmed processor and a communication device associated with the user.  The communication device unconventionally transmits bet messages and is equipped with a global positioning device.  *See* Appx0258-0259 at Claim 13.  As noted *supra*, wireless gaming did not even *exist* as of the Date of Invention, and the incorporation of reliable GPS capability in mobile devices was still several years away.  *See* Appx0616-0617 at ¶ 16 and Appx0622 at ¶ 27.   Still further, independent Claim 13 of the '341 Patent recites the unconventional practice of determining whether a bet should be accepted based upon the GPS data received via a bet message from a communication device.  Appx0258-0259 at Claim 13.  Other Claims further recite additional inventive elements, such as the reference to jurisdictional gaming laws in combination with GPS data in assessing whether or not to accept a given remotely-placed wager.  *See* Appx0259 at Claim 14.  These exemplary limitations capture the inventive concepts (as discussed herein, and as alleged in the Complaint), and elevate these Asserted Claims beyond the mere "organization of human activity." The District Court fails to analyze the Asserted Claims in light of their novel system architecture; one which utilizes a specially programmed processor to receive bet messages from geo-located communication devices.  Moreover, even assuming for the moment that the Asserted Claims incorporate certain ordinary hardware

-29-

components, such is not dispositive as Step Two. *See, e.g., Vineyard Investigations v. E&J Gallo Winery,* 2021 WL 22497 at *6 (E.D. Cal. Jan. 4, 2021) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 71 (2012)) ("However, the Supreme Court has also recognized that because "all inventions at some level embody, use, reflect, rest upon, or apply ... abstract ideas," this exclusionary principle cannot be so broad as to make something un-patentable simply because it involves, at some level, an abstract concept"); *Bascom,* 827 F.3d at 1350 (an inventive concept can be found in the non-conventional and non-generic arrangement even of known, conventional pieces). In any event, the District Court's conclusion that the aspects of the Asserted Claims were all conventional is belied by the uncontested fact that the online wagering industry did not even exist until a number of years after the Date of Invention. Appx0616-0617 at ¶ 16.

Finally, to the extent the Order relies upon the fact that the technical building blocks of the Asserted Claims (*e.g.,* computers and GPS devices) were all in existence as of the Date of Invention, such does not negate inventiveness. Of course, as this Court has long recognized: "Most, if not all, inventions are combinations and mostly of old elements." *See, e.g., Cellspin,* 927 F.3d at 1318. Nevertheless, concrete allegations in the Complaint concerning inventiveness and non-conventionality, such as those in this case, are more than sufficient at the pleading stage to establish eligibility. *Id.* at 1316-19.

2.    THE *CELLSPIN* OPINION AND THE OPERATIVE COMPLAINT

Next, the District Court erred in rejecting Plaintiff's arguments that the Complaint offers more than sufficient statements of fact to withstand dismissal under at least *Cellspin Soft, Inc. v. Fitbit Inc.,* 927 F.3d 1306 (Fed. Cir. 2019).  *See* Appx0018-0019.   According to the District Court, the Complaint here fails to provide sufficient "specificity and detail."  Appx0019.  As even a cursory review of the Complaint reveals, the District Court plainly erred.

Here, just as in the *Cellspin* case, the Complaint contains a multitude of *unrebutted* specific and plausible statements of fact establishing the non-abstract nature of the Asserted Claims.   More specifically, and as discussed *supra*, the Complaint alleges that, as of the Date of Invention in May 2002:

> [T]he mobile gaming industry was essentially non-existent.  The first mobile gaming venture to launch internationally did not arise until 2003 in the United Kingdom, and that in the form of an elementary interactive instant win game.   *See, e.g.,* https://www.gamblingcommission.gov.uk/for-the-public/National-Lottery/About-the -National-Lottery.aspx.    The concept of geolocation restrictions on such gaming platforms was not routine as of the priority date, and did not become so until many years thereafter.  Indeed, it was not until 2006 that the Nevada Gaming Control Board first cleared the way for wireless gambling in the United States.  Even at that time, the primary concern was over data security and identity controls, not geolocation   *See* https://www.nytimes.com/2006/05/03/technology/techspecial3/03gamble.html?smid=url-share.

*See* Appx0616-0617 at ¶ 16.

Such specific factual allegations, as set forth in the Complaint, are plainly relevant to the presence of inventive concepts captured in the Asserted Claims. Again, the very fact that the industry did not recognize and adopt the patented solution until *after* its disclosure by Plaintiff is compelling evidence of unconventionality as of 2002. These specific factual allegations in the Complaint define the state of the art as of the Date of Invention and provide a basis in fact to conclude that the Asserted Claims are indeed patent-eligible. *See Cellspin,* 927 F.3d at 1315 (an "inventive concept" is one which amounts to "something more than well-understood, routine, [and] conventional activities previously known to the industry"). Indeed, just as in *Cellspin,* the Complaint here does significantly more than just label certain aspects as "inventive" – rather, the Complaint sets out evidence (*see* Appx0616-0617 at ¶ 16) suggesting that the claimed approach was in fact unconventional. *Cellspin,* 927 F.3d at 1318-19.

The Complaint further alleges as follows:

As further evidence of the non-routine and unconventional nature of the solutions captured in the Beteiro Patents is the stated position of the now-leading geolocation provider in the United States that: "Historically, the notion that you could indeed draw geographical boundaries on the internet would have been laughable; such was the weakness of the original technologies and the availability of cheap and easy methods to fake your location online." *See* https://www.geocomply.com/paspa-geolocation-compliance/. As such, the prevailing view as of the date of invention was to avoid global positioning as a means of legal compliance.

-32-

*See* Appx0617 at ¶ 17.

Thus, as factually recited in the Complaint, the Asserted Claims unconventionally capture an architecture and technological solution in which the drawing of geographical boundaries on the Internet is accomplished by using geolocation. This approach was directly counter to the accepted approaches as of the Date of Invention. As such, the inventions as claimed provide substantially more than the mere recital of an abstract idea.

The Complaint further alleges as follows:

[As of the Date of Invention,] the use of geolocation and global positioning as an integral data point in the processing of mobile wagers was still many years away. For example, the first GPS chip to be incorporated into a mobile device with sufficient sensitivity to assess the ability of an individual to place a wager in a given jurisdiction was the GL20000 GPS Chip, which was first used in the HP iPaq in 2005.

*See* Appx0622 at ¶ 27.

Again, the Complaint cites, with specificity, facts supporting the unconventionality and eligibility of the Asserted Claims. Here, the fact that the industry was not even technologically able to widely practice the claimed inventions is compelling and unrebutted evidence of eligibility.

Similarly, the Complaint further alleges as follows:

[T]he current industry leader in the space – GeoComply – did not even exist until 2011, nearly a full decade later than the nominal date of invention in May 2002. *See, e.g.,*

-33-

*https*://www.geocomply.com/about-us/.    This    fact    alone    is compelling evidence of the non-routine and unconventional inventive concepts captured in the claims of the Beteiro Patents.

*See* Appx0622 at ¶ 28.

Again, the Complaint recites uncontested facts which, taken as true, negate Defendant's self-serving attorney argument that nothing in the Asserted Claims was unconventional.

Of course, the inventions as claimed overcame many deficiencies in the art as of the Date of Invention. Among them was the obvious inability of casino operators to broaden their wagering client base beyond the physical walls of their brick-and-mortar venues. In this regard, the Complaint states as follows:

> [T]he claims of the Asserted Patents recite apparatuses and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers. The claims of the Asserted Patents provide a basis for legally compliant remote wagering, increased accessibility to wagering platforms, increased opportunity for wagering providers, increased accessibility to wagering information to wagerers, reduced fraud, and more secure transactions among wagering providers and wagerers. *See, e.g.,* Appx0385-0388 at 2:5-7:58.

*See* Appx0622-0623 at ¶ 31.

Again, and as noted *supra*, these factual assertions must be taken as true, and are derived directly from the intrinsic record. The foregoing reiterates the fact that the Asserted Claims are drawn to inventions which overcome the routine and conventional approach of the time, including because the inventions overcome the

traditional limitations of "in-person" wagering by providing a technological solution

to the Internet-centric problem created by online wagering.

Even in addition to the foregoing, the Complaint further recites as follows:

> The claims of the Asserted Patents overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.  For example, as of the date of invention, "[w]hile many individuals enjoy gambling and/or enjoy engaging in gaming activities and/or gambling activities, they may not always have access to particular gaming venues or gaming activities.  Further, while many individuals may also be interested in making a gaming and/or gambling experience more interesting, more challenging, and/or more exciting, they typically do not have access to certain information, products, and/or services, for enhancing their experience or experiences." Appx0385 at 1:44-52.  The inventions as claimed overcome these deficiencies in the state of the art, and provide a means by which interested parties can access gambling services remotely, while preserving geographic restrictions on such access.  As explained, as of the date of invention, "prior art gaming systems and/or gambling systems, as well as conventional gaming practices and/or gambling practices, have failed to provide the gaming community with services, products, and/or other offerings, which would provide for more enhanced gaming and/or gambling activities, environments, and/or experiences." Appx0385 at 1:53-58.

See Appx0623 at ¶ 32.

Again, these specific factual allegations in the Complaint define the

advancements over the state of the art and provide a basis in fact to conclude that the

Asserted Claims are indeed patent-eligible.  Moreover, the fact that the Complaint

recites the disclosures and teachings *as taken directly from the written specification*

of the Asserted Claims belies the District Court's erroneous conclusions relating to eligibility. In *Berkheimer*, the Court of Appeals fully credited the specification's disclosure of the state of the art, as well as its recitation of improvements over the art, as sufficient to create fact issues precluding summary judgment, as long as such were captured in the claims. *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1369 (Fed. Cir. 2018); *see also PPS Data,* 404 F.Supp.3d at 1040-41 ("The Federal Circuit routinely relies on factual assertions in patent specifications not only as *some* evidence, but *conclusive* evidence of inventiveness") (emphasis added). Of course, the benefits of the inventions, as noted in the Complaint, are conferred due to the inventive concepts as claimed, as opposed to the mere practice of the "abstract idea" suggested by the District Court.

The Complaint further alleges as follows:

As of the date of invention (and still today), different jurisdictions had different laws relating to gambling activities, but no effective way to administer and regulate electronic and online wagering. Accordingly, the inventions as claimed provided a technological solution to the technological problems arising in the online wagering context. As explained: "The present invention can be utilized to facilitate compliance with the various and respective state, country, and/or sovereignty, gaming laws and/or gambling laws and/or so as to facilitate any reporting of gaming activities and/or gambling activities to the appropriate state, country, and/or sovereignty, authorities and/or so as to facilitate any payments of fees and/or taxes relating to the gaming activities and/or gambling activities." Appx0392 at 16:14-21. Indeed, one of the express objects of the inventions as claimed was "to provide an apparatus and method for facilitating gaming activity and/or gambling

-36-

activity which utilize global positioning technology in order to ascertain the jurisdiction in which or from which a bet is placed." Appx0397 at 26:14-18. Such a solution was unconventional as of the date of invention, especially in view of the state of the art at the time, which was dependent upon in-person wagering.

*See* Appx0623-0624 at ¶ 33.

These specific factual allegations again define benefits and technological improvements captured in the Asserted Claims over the prevailing art as of May 2002; thus, the Asserted Claims are patent-eligible, and the Order should be reversed. *See PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) ("when the claimed technology overrides the routine and conventional sequence of events in order to provide a technological benefit, it is eligible at *Alice* Step Two") (citing *SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019). Stated differently, claims such as these include an inventive concept when they provide a technological solution to a technological problem. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016). The inventions of the Asserted Claims solve the technical problem facing the industry in 2002 associated with satisfying the various legal requirements of different betting jurisdictions.

The Complaint provides additional specific statements of fact defining benefits and technological improvements captured in the Asserted Claims over the prevailing art as of May 2002. By way of further example, the Complaint states as

follows:

> The inventions as claimed further overcome the deficiencies
> existing in the art as of the date of invention by providing a means
> by which gambling platform providers could more effectively
> market various gaming activities to wider audiences. As explained,
> the inventions as claimed overcome these deficiencies by
> "allow[ing] a user or player to access a central processing computer
> and search for a gaming activity, gaming activities, a gaming event,
> or gaming events, in which the user or player may desire to bet or
> participate." Appx0400 at 32:6-10. As such, the inventions as
> claimed provide non-conventional solutions to the conventional
> problems of the day by making it possible to expose more
> individuals to the various gaming options available in the market.

*See* Appx0624 at ¶ 34.

Again, these specific factual allegations in the Complaint define advancements over the state of the art and provide a basis in fact to conclude that the Asserted Claims are indeed patent-eligible. Moreover, the fact that the Complaint recites the disclosures and teachings *as taken directly from the written specification* of the Asserted Claims belies the conclusions reached by the District Court in its erroneous Order. *See Berkheimer,* 881 F.3d at 1369; *see also PPS Data,* 404 F.Supp.3d at 1040-41. Of course, the advancements over the state of the art are captured in the Asserted Claims, inasmuch as each such claim is specifically directed to methods and apparatuses which, *inter alia*, determine whether or not certain wagers are permitted using position or location information as received from the wagering device. *See, e.g.,* Appx0258-0259 at Claim 13 (reciting: "…wherein the

-38-

computer determines if the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device"); *see also* Appx0406 at 44:37-58 (describing a preferred embodiment in which the precise location of the user communication device is utilized to assess legal compliance).

The Complaint further states as follows:

> The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by providing methods and apparatuses for providing wagering opportunities on an increased scale over traditional person-to-person live wagering. As explained, the inventions as claimed overcome prior deficiencies in this regard because "the apparatus 100 also includes any number of user computers or user communication devices 20." Appx0402 at 35:65-67. As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the wagering platform providers can maximize the number of wagers made without a proportional increase in overhead, wagering equipment/terminals, or employee capacity.

*See* Appx0624-0625 at ¶ 35.

Once again, these specific factual allegations, which must be taken as true, define benefits and technological improvements captured in the Asserted Claims over the prevailing art as of May 2002. As such, the Asserted Claims are patent-eligible. As noted, the inventions define unconventional approaches over the existing art, given that wagering platform providers could increase the number of wagers accepted without a proportional increase in overhead and employees required

in the traditional one-on-one or face-to-face wagering paradigm of the past. Indeed, even the District Court recognizes this improvement, as it identifies the "Stateline Casino" problem (which persisted unchanged until the Date of Invention). Formerly, service providers were required to rely upon the observable physical presence of those placing wagers in order to provide their services. The claimed inventions, however, provide a new platform whereby gambling activities can be carried out remotely. *See, e.g.,* Appx0395 at 21:4-13.

Of course, the inventions as claimed overcame the glaring deficiency in the art as of the Date of Invention; namely, the inability of casino operators to broaden their wagering client base beyond the physical walls of their brick-and-mortar venues. In this regard, the Complaint states as follows:

> As of the date of invention (and still today), different jurisdictions had different laws relating to gambling activities, but no effective way to administer and regulate electronic and online wagering. A key problem as of the date of invention was the inability of wagering platform providers to geographically restrict access by remote participants. Accordingly, the inventions as claimed provided a technological solution to the technological problems arising in the online wagering context by unconventionally adapting the mobile devices used by wagering participants so as to create new mobile gaming machines. As explained: "[T]he user communication device 20 can also include a global positioning device 20J for determining the position or location of the user communication device 20. In a preferred embodiment, the global positioning device 20J can be utilized to determine the position or location of the user communication device 20 so as to, for example, determine a jurisdiction in which the user communication device 20 is located and/or is being utilized." Appx0406 at 44:37-44. As

-40-

such, the inventions as claimed provided non-conventional solutions to the conventional problems of the day. Indeed, the very infringing scenarios in existence today were contemplated and foreseen by the inventor many years ago: "In another preferred embodiment, wherein the user communication device 20 is a wireless communication device and/or a mobile communication device (*i.e.* personal digital assistant, wireless videophone, wireless telephone, or palm-held device, etc., which can be equipped with a global positioning system (GPS) device 20J), the location of the user communication device 20 and, therefore, the location from which the gaming activity and/or gambling activity originates and/or from which it takes place can be determined by the user communication device 20 automatically transmitting position data and/or information to the respective central processing computer 10 and/or gaming facility computer 30 at the time of the user's accessing of the respective central processing computer 10 and/or gaming facility computer 30." Appx0424 at 80:10-24. Again, this scenario was far from conventional as of the date of invention, as evidenced by the fact that the first iPhone was not introduced to the market until 2007, and the common "app-store" did not exist until 2008, many years after the date of invention. https://en.wikipedia.org/wiki/IPhone and https://en.wikipedia.org/wiki/App_Store_(iOS/iPadOS).
Moreover, as of 2002, it was effectively illegal in the United States to even wager on athletic events, much less to do so remotely. More specifically, the Professional and Amateur Sports Protection Act of 1992 was the federal law in effect from October 1992 until it was declared unconstitutional by the United States Supreme Court in May 2018. *See Murphy v. National Collegiate Athletics Association,* 138 S.Ct. 1461 (2018). In view of the prevailing and long-standing laws in the United States, the inventive concepts captured in the claims of the Beteiro Patents were plainly unconventional and non-routine.

*See* Appx0625-0626 at ¶ 36.

To reiterate, as of the Date of Invention in May 2002, it was effectively illegal to remotely wager on sports in the United States. The notion (as determined by the

District Court) that the practice of facilitating such wagers using geolocation information derived from a mobile device was purportedly "conventional" at the time is plainly incorrect and flatly rebutted by the factual statements of the Complaint.

The Complaint continues by explaining how the inventions overcame the deficient state of the art in a technological way by defining an unconventional central processing computer:

> As of the date of invention (and still today), different jurisdictions had different laws relating to gambling activities, but no effective way to administer and regulate electronic and online wagering. A key problem as of the date of invention was the inability of wagering platform providers to geographically restrict access by remote participants. Accordingly, the inventions as claimed provided a technological solution to the technological problems arising in the online wagering context by creating unconventional central processing computers specially programmed to assess the legality of proposed wagers in real-time. As explained: "At step 2003, the respective central processing computer 10 and/or gaming facility computer 30 can determine if the remote gaming activity and/or gambling activity is allowed by the state having jurisdiction over the remote gaming activity and/or gambling activity. If, at step 2003, the respective central processing computer 10 and/or gaming facility computer 30 determines that the remote gaming activity and/or gambling activity is disallowed by the identified state having jurisdiction over same, then the operation of the apparatus 100 will proceed to step 2004 and the respective central processing computer 10 and/or gaming facility computer 30 will cancel the respective bet, wager, and/or gaming activity and/or gambling activity." Appx0424 at 80:37-50. As such, the claimed "central processing computer" does not merely comprise standard conventional hardware and software; rather, as claimed, it advances the functionality of the computer as a useful tool in the electronic

> processing of wagers, the prevention of illegal gambling, and providing a measure of compliance on the part of wagering platform providers.

*See* Appx0626-0627 at ¶ 37.

As stated in the specification, the claimed "central processing computer" does not merely comprise standard conventional hardware and software; rather, as claimed, it advances the functionality of the computer as a useful tool in the electronic processing of wagers, the prevention of illegal gambling, and providing a measure of compliance on the part of wagering platform providers. Such advancements in the art are non-abstract and inventive.

In sum, the Court must accept all factual allegations in the operative Complaint as true, and draw all reasonable inferences in the patentee's favor. *Tobii Tech.,* 2021 WL 3879132 at *2. Here, just as in the *Cellspin* case discussed above, the Complaint contains a multitude of *unrebutted* specific and plausible statements of fact establishing the non-abstract nature of the Asserted Claims. The District Court plainly erred in failing to credit the numerous specific and detailed allegations concerning eligibility in the Complaint, and the erroneous Order should be reversed.

### 3.   DEFERENCE TO UNITED STATES PATENT EXAMINER

Next, the District Court erred in declining to afford the views and findings of the United States Patent Examiners *any* deference, despite the fact that eligibility under 35 U.S.C. § 101 was central to the prosecution of the Asserted Claims.

-43-

According to the District Court, the Examiner failed to expressly cite to *Alice*, and thus his findings are irrelevant. *See* Appx0019-0020. According to the District Court, the Examiner instead considered eligibility under *SiRF Tech.*, which predates *Alice* and applies a different standard. The District Court erred. While the "machine or transformation test" as applied in *SiRF Tech.* is no longer dispositive, it nevertheless remains valuable and pertinent, even under *Alice*. *See CardioNet LLC v. InfoBionic, Inc.,* 2021 WL 5024388 at *6 (Fed. Cir. 2021) ("Satisfying the machine-or-transformation test, by itself, is not sufficient to render a claim patent-eligible because not all transformations or machine implementations infuse an otherwise ineligible claim with an inventive concept. Indeed, the Supreme Court itself held in *Bilski* that the machine-or-transformation test is a 'useful and important clue' for determining patent eligibility, but not dispositive") (citing *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014); *Bilski v. Kappos*, 561 U.S. 593, 604 (2010)). Regardless: "Patents granted by the Patent and Trademark Office are presumptively valid. This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies the prerequisites for issuance of a patent, including § 101." *Cellspin,* 927 F.3d at 1319 (further noting that: "To the extent the district court departed from this principle by concluding that issued patents are presumed valid but not presumed patent eligible, it was wrong to

do so").

In any event, the Examiner did not rest his conclusions solely on *SiRF Tech.* or on the machine-or-transformation test. The Notice of Allowance cited by the District Court is dated October 9, 2018, which is several years after *Alice*. *See* Appx0671-0679. As such, it is presumed that the Examiner properly applied *Alice*, especially given the fact that the USPTO issued examination instructions in light of *Alice* only a few days after the opinion was issued in 2014. *See, e.g., Eclipse IP LLC v. McKinley Equipment Corp.,* 2014 WL 4407592 at *3 (C.D. Cal. 2014).

In any event, the actual facts relating the detailed assessments of eligibility undertaken during prosecution are laid out with specificity in the Complaint filed against each Defendant. *See* Appx0617-0620 at ¶¶ 18-21; Appx0627 at ¶ 38; Appx0628 at ¶ 41; Appx0629-0630 at ¶ 45; Appx0630 at ¶ 49; Appx0631-0632 at ¶ 53. As noted specifically in ¶ 18:

> As further evidence of the stated non-routine aspects of the inventions, during prosecution of the '920 Patent, Primary Examiner Jasson Yoo specifically and expressly considered whether the claims of the '920 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*. Examiner Yoo affirmatively and expressly found that the claims are in fact patent eligible under 35 USC §101 because: (i) all claims explicitly require the use of a particular machine or processor to detect the posting of information; (ii) all claims explicitly require the use of a particular machine or processor to generate and transmit a notification message to a communication device; (iii) all claims explicitly require the use of a particular receiver for receiving a bet message including location information;

-45-

and (iv) all claims explicitly require the use of a particular machine
or processor to determine whether the bet is allowed or disallowed
by using GPS. *See* Notice of Allowability, dated March 16, 2018.

*See* Appx0617-0618 at ¶ 18.

The fact that the Examiner cited *SiRF Tech.* to illustrate his point does not

negate the express findings of fact, which are all pertinent to eligibility, and which

were rejected by the District Court.

The Complaint continues by expressly stating the same reasons for allowance

of the claims of the '341 Patent [Appx0618 at ¶ 19] and of the '266 Patent

[Appx0618-0619 at ¶ 20].

Still further, and critically, the Complaint states as follows:

As further evidence of the stated non-routine aspects of the
inventions, during prosecution of Application No. 16/939,030,
Primary Examiner Jasson Yoo specifically and expressly
considered whether the then-pending claims were eligible under 35
USC §101 in view of the United States Supreme Court's decision
in Alice. Examiner Yoo affirmatively and expressly found that the
claims are in fact patent eligible under 35 USC §101 because: (i)
all claims integrate the invention into a practical application by
providing an improvement to a technical field; (ii) all claims
provide an improvement to a technical field by allowing individuals
to access gaming or gambling venues and/or activities without
requiring them to be physically located at gaming or gambling
venues and/or activities; (iii) all claims provide individuals with
information regarding the gaming or gambling venues so that bets
can be placed from a remote location; (iv) all claims achieve the
stated benefits by: (a) detecting a posting of information regarding
a gaming activity, gambling activity or sporting event, and (b)
generating a notification message regarding the gaming activity,
gambling activity or sporting event; (v) in all claims a global

position device is used to determine a position or location information of a communication device associated with the individual, and allowing or disallowing the activity request or bet based on the position or location information; as such, the claimed machine is required and imposes a meaningful limit on the scope of a claim and plays a significant part in permitting the claimed method to be performed; (vi) at the time the application was filed, the use of global positioning systems for various applications and providing a user a message if a posting was detected were not as well-known as today; in fact, and as indicated in the specification, prior art systems failed to provide a system that allows individuals access to particular gaming venues or gaming activities, and did not provide individuals certain information for enhancing their experience; and (vii) the claimed invention provides an improvement to online betting and therefore is integrated into a practical application. *See* Notice of Allowability, dated October 27, 2021.

*See* Appx0619-0620 at ¶ 21.

The foregoing citation to the intrinsic record is important, and was again ignored by the District Court.  As cited, the Examiner plainly applied the well-recognized two-step analysis under *Alice,* and specifically found that the claims at issue (which issued as United States Patent No. 11,398,133; *see* Appx0680-0766) are patent eligible; those exact same reasons apply equally to the Asserted Claims here.

The fact that the Patent Examiner specifically and repeatedly addressed the patent eligibility issue under the appropriate *Alice* standard is compelling evidence that the issued claims are, in fact, non-abstract.  As such, and notwithstanding the District Court's conclusion that the Examiner is owed zero deference, the Court

should properly presume that the Examiners carried out their duties properly. *Stone Basket Innov. v. Cook Medical,* 892 F.3d 1175, 1179-80 (Fed. Cir. 2018) (moving party has burden to overcome the deference due to a qualified government agency). The District Court failed to overcome such deference, and is in error.

To reiterate, the Patent Examiner expressly found that the Asserted Claims, *inter alia*:

(i)     all claims explicitly require the use of a particular machine or processor to detect the posting of information;

(ii)    all claims explicitly require the use of a particular machine or processor to generate and transmit a notification message to a communication device;

(iii)   all claims explicitly require the use of a particular machine or processor for receiving a bet message including location information;

(iv)    all claims explicitly require the use of a particular machine or processor to determine whether the bet is allowed or disallowed by using GPS.

(v)     all claims integrate the invention into a practical application by providing an improvement to a technical field;

(vi)    all claims provide an improvement to a technical field by allowing individuals to access gaming or gambling venues and/or activities without requiring them to be physically located at gaming or gambling venues and/or activities;

(vii)   all claims provide individuals with information regarding the gaming or gambling venues so that bets can be placed from a remote location;

-48-

(viii)   all claims achieve the stated benefits by: (a) detecting a posting of information regarding a gaming activity, gambling activity or sporting event, and (b) generating a notification message regarding the gaming activity, gambling activity or sporting event;

(ix)    in all claims a global position device is used to determine a position or location information of a communication device associated with the individual, and allowing or disallowing the activity request or bet based on the position or location information; as such, the claimed machine is required and imposes a meaningful limit on the scope of a claim and plays a significant part in permitting the claimed method to be performed;

(x)     at the time the application was filed, the use of global positioning systems for various applications and providing a user a message if a posting was detected were not as well-known as today; in fact, and as indicated in the specification, prior art systems failed to provide a system that allows individuals access to particular gaming venues or gaming activities, and did not provide individuals certain information for enhancing their experience; and

(xi)    the claimed invention provides an improvement to online betting and therefore is integrated into a practical application.

*See* Appx0617-0620 at ¶¶ 18-21.

These specific findings by the Patent Examiner illustrate the thorough review carried out of the Asserted Claims, and reinforces the statements of the Complaint and the intrinsic record concerning eligibility and inventiveness.  Such facts are, at the very least, pertinent to the eligibility analysis and should not be summarily rejected.  *See Skillz Platform Inc. v. Aviagames Inc.*, 2022 WL 783338 at *11 (N.D.

Cal. 2022) (crediting Examiner findings concerning eligibility).  Simply stated, the

Asserted Claims recite decidedly unconventional technological advancements over

the then-existing state of the art, and are patent eligible.

## VII.  CONCLUSION AND PRAYER FOR RELIEF

The District Court's erroneous Orders granting Defendants' Motions to

Dismiss should be reversed, the Asserted Claims should be declared patent eligible

under 35 U.S.C. § 101, and these matters should be remanded for further proceedings

and individual trials on the merits.


Dated: March 9, 2023

*/s/ M Scott Fuller*
Randall Garteiser
rgarteiser@ghiplaw.com
(415) 568-0553
Christopher A. Honea
chonea@ghiplaw.com
(918) 510-5375
M. Scott Fuller
sfuller@ghiplaw.com
(214) 729-6548
**GARTEISER HONEA PLLC**
119 West Ferguson Street
Tyler, Texas 75702
Main Telephone:  (415) 785-3762
Facsimile:  (415) 785-3805

*Attorneys for Plaintiff-Appellant*
BETEIRO SOFT, INC.

### CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Federal Circuit Rule 32(b).  This Brief contains 11,523 words, excluding those portions of the brief exempted by Federal Circuit Rule 32(b)(2).  This Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 14-point Times New Roman font.

/s/ *M. Scott Fuller*
M. Scott Fuller

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 9, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ *M. Scott Fuller*
M. Scott Fuller