# United States Court of Appeals
# for the Federal Circuit

BETEIRO, LLC,

*Plaintiff-Appellant,*

v.

DRAFTKINGS INC., POINTSBET USA, INC., BETMGM, LLC,
HILLSIDE NEW JERSEY LLC, BETFAIR INTERACTIVE US LLC,
TSG INTERACTIVE US SERVICES LTD. CORP., ODS
TECHNOLOGIES LP, KINDRED GROUP PLC, TRANNEL
INTERNATIONAL, LTD., UNIBET INTERNATIONAL, LTD.,
UNIBET INTERACTIVE, INC.,

*Defendants-Appellees.*

Appeals from the United States District Court for the District of New Jersey in
Case Nos. 1:21-cv-20148-CPO-SAK, 1:21-cv-20155-CPO-SAK, 1:21-cv-20156-
CPO-SAK, 1:21-cv-20158-CPO-SAK, 1:22-cv-00577-CPO-SAK, 1:22-cv-01536-
CPO-SAK, Judge Christine P. O'Hearn

## BRIEF OF APPELLEES

Evan M. Rothstein
Patrick B. Hall
ARNOLD & PORTER
KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO  80202-2569
(303) 863-1000
*Counsel for Defendant-Appellee*
*BetMGM, LLC*

Arthur A. Zorio
BROWNSTEIN HYATT FARBER
SCHRECK LLP
5520 Kietzke Lane, Suite 110
Reno, NV 89511
(775) 324-4100
*Counsel for Defendant-Appellee*
*Hillside New Jersey LLC*

Mark Michael Supko
CROWELL & MORING, LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595
(202) 624-2500

Molly A. Jones
CROWELL & MORING, LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
(415) 986-2800
*Counsel for Defendants-Appellees*
*Kindred Group PLC, Trannel*
*International, Ltd.,*
*Unibet International, Ltd., and Unibet*
*Interactive, Inc.*

Charles Kramer Verhoeven
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street
San Francisco, CA 94111
(415) 875-6600

Jared Weston Newton
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
9th Floor
1300 I Street NW
Washington, DC 20005
(202) 538-8108
*Counsel for Defendant-Appellee*
*PointsBet Inc.*

Megan Joanna Redmond
Caroline A. Bader
Eric Allan Buresh
ERISE IP, P.A.
7015 College Boulevard, Suite 700
Overland Park, KS 66211
(913) 777-5600
*Counsel for Defendants-Appellees*
*BetFair Interactive US LLC, TSG*
*Interactive US Services Ltd. Corp.,*
*ODS Technologies LP*

George Hopkins Guy, III
BAKER BOTTS LLP
1001 Page Mill Road
Building One
Palo Alto, CA 94304
(650) 739-7500

Jamie Roy Lynn
BAKER BOTTS LLP
700 K Street, NW
Washington, DC 20001
(202) 639-7700

Robert Lawrence Maier
BAKER BOTTS LLP
45th Floor
30 Rockefeller Plaza
New York, NY 10112
(212) 408-2500

Clarke Stavinoha
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, TX 75201
(214) 953-6500
*Counsel for Defendant-Appellee*
*DraftKings Inc.*

# PATENT CLAIMS AT ISSUE

## United States Patent No. 9,965,920

CLAIM: 16

An apparatus, comprising:

a processor, wherein the processor is specially programmed to detect a posting of information regarding a sporting event for which a bet can be placed on, over, or via, the Internet or the World Wide Web or for which the bet can be placed on-line, wherein the processor detects the posting of the information regarding the sporting event, and further wherein the processor generates a notification message containing information regarding the sporting event, and further wherein the apparatus initiates a communication link on, over, or via, a communication network with a first user communication device, wherein the first user communication device is associated with an individual, and further wherein the apparatus transmits the notification message to the first user communication device via the communication link;

a video recording device, an audio recording device, or a video conferencing device, wherein the video recording device, the audio recording device, or the video conferencing device, obtains or records live video information regarding the sporting event, live audio information regarding the sporting event, or live videoconferencing information regarding the sporting event;

a receiver, wherein the receiver receives a bet message, wherein the bet message is transmitted from the first user communication device or from a second user communication device, wherein the first user communication device or the second user communication device comprises a global positioning device, wherein the global positioning device determines a position or location of the first user communication device or the second user communication device, wherein the bet message contains information regarding a bet to be placed on or regarding the sporting event and information regarding the position or location of the first user communication device or the second user communication device; and

a transmitter, wherein the transmitter transmits the live video information regarding the sporting event, the live audio information regarding the sporting event, or the live videoconferencing information regarding the sporting event, to the first user communication device, to the second user communication device, or to a third user communication device,

wherein the apparatus or the processor processes information contained in the bet message and determines whether the bet is allowed or disallowed and, if the bet is allowed, the apparatus or the processor processes information for placing the bet for or on behalf of the individual.

## United States Patent No. 10,043,341

CLAIM: 13

An apparatus, comprising:

a computer, wherein the computer is specially programmed for processing information for providing for a placement of a bet on or regarding a sporting event, wherein the computer further comprises:

a receiver, wherein the receiver receives a request to notify an individual regarding the sporting event for or on which the bet can be placed;

a memory, wherein the memory stores information regarding the request to notify the individual regarding the sporting event; and

a processor, wherein the processor is specially programmed to detect a posting of information regarding the sporting event and to generate a notification message regarding the sporting event, wherein the processor detects the posting of the information regarding the sporting event, and further wherein the processor generates the notification message regarding the sporting event;

wherein the computer, in response to a generating of the notification message by the processor, initiates a communication link with a first communication device, wherein the first communication device is associated with the individual, and further wherein the computer transmits the notification message to the first communication device,

wherein the computer receives a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further wherein the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device determines a position or location of the first communication device or the second communication device,

wherein the bet message contains information regarding a bet to be placed on or regarding the sporting event and information regarding the position or location of the first communication device or the second communication device at a time of a transmission of the bet message from the first communication device, or from the second communication device, to the computer,

wherein the computer determines if the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, the computer processes information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, the computer processes information for disallowing the bet.

## United States Patent No. 10,147,266

CLAIM: 1

An apparatus, comprising:

a computer, wherein the computer is specially programmed for processing information for providing for a placement of a bet on or regarding a gaming activity, a gambling activity, or a sporting event, wherein the computer is specially programmed to detect a posting of information regarding the gaming activity, the gambling activity, or the sporting event, and to generate a notification message regarding the gaming activity, the gambling activity, or the sporting event, wherein the computer detects the posting of the information regarding the gaming activity, the gambling activity, or the sporting event, and further wherein the computer generates the notification message regarding the gaming activity, the gambling activity, or the sporting event,

wherein, in response to a generating of the notification message, the computer initiates a communication link with a first communication device and transmits the notification message to the first communication device as an electronic transmission, or the computer transmits the notification message as an electronic mail message, wherein the electronic mail message is received by or received at a first communication device, wherein the first communication device is associated with an individual,

wherein the computer receives a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further wherein the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device determines a position or location of the first communication device or the second communication device,

wherein the bet message contains information regarding a bet to be placed on or regarding the gaming activity, the gambling activity, or the sporting event, and information regarding the position or location of the first communication device or the second communication device,

wherein the computer determines if the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, the computer processes information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, the computer processes information for disallowing the bet.

CLAIM: 2

A computer-implemented method, comprising:

detecting, with or using a computer which is specially programmed for processing information for providing for a placement of a bet on or regarding a gaming activity, a gambling activity, or a sporting event, a posting of information regarding the gaming activity, the gambling activity, or the sporting event;

generating, with or using the computer, a notification message regarding the gaming activity, the gambling activity, or the sporting event;

initiating, with or using the computer, a communication link with a first communication device and transmitting the notification message to the first communication device as an electronic transmission, or transmitting, from the computer, the notification message as an electronic mail message, wherein the electronic mail message is received by or received at a first communication device, wherein the first communication device is associated with an individual;

receiving, with the computer, a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further wherein the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device

determines a position or location of the first communication device or the second communication device, and further wherein the bet message contains information regarding a bet to be placed on or regarding the gaming activity, the gambling activity, or the sporting event, and information regarding the position or location of the first communication device or the second communication device; and

determining, with or using the computer, whether the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, processing information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, processing information for disallowing the bet.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 22-2275, 22-2277, 22-2278, 22-2279, 22-2281, 22-2283 |
| **Short Case Caption** | Beteiro, LLC v. DraftKings Inc. |
| **Filing Party/Entity** | DraftKings Inc. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/08/2023

Signature: /s/ Jamie R. Lynn

Name: Jamie R. Lynn

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| DraftKings Inc. | | DraftKings Inc., a Nevada Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| James E. Cecchi, Carella Byrne Cecchi Olstein Brody & Agnello, P.C. | | |
| Lindsey H. Taylor, Carella Byrne Cecchi Olstein Brody & Agnello, P.C. | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☑ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 22-2277 |
| **Short Case Caption** | Beteiro, LLC v. PointsBet USA, Inc. |
| **Filing Party/Entity** | PointsBet USA, Inc. |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/13/2022

Signature: /s/ Jared W. Newton

Name: Jared W. Newton

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| PointsBet USA, Inc. | | PointsBet Holdings Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable   ☐ Additional pages attached

| | | |
|---|---|---|
| Saul Ewing Arnstein & Lehr LLP | Charles M. Lizza | William C. Baton |
| Alexander Callo | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable   ☐ Additional pages attached

| | | |
|---|---|---|
| Beteiro, LLC v. DraftKings, Inc. Appeal No. 22-2275 (CAFC) | Beteiro, LLC v. BetMGM, LLC Appeal No. 22-2278 (CAFC) | Beteiro, LLC v. Hillside New Jersey LLC. Appeal No. 22-2279 (CAFC) |
| Beteiro, LLC v. BetFair Interactive US LLC Appeal No. 22-2281 (CAFC) | Beteiro, LLC v. Kindred Group plc Appeal No. 22-2283 (CAFC) | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable   ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2022-2278 |
| **Short Case Caption** | Beteiro, LLC v. BetMGM, LLC |
| **Filing Party/Entity** | Defendant/Appellee BetMGM, LLC |

> **Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/09/2023

Signature: /s/ Evan M. Rothstein

Name: Evan M. Rothstein

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| BetMGM, LLC | | MGM Resorts International  Entain plc |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☑  Additional pages attached

| | | |
|---|---|---|
| Evan M. Rothstein | Partner | Arnold & Porter Kaye Scholer LLP |
| Theresa M. House | Partner | Arnold & Porter Kaye Scholer LLP |
| Patrick B. Hall | Associate Attorney | Arnold & Porter Kaye Scholer LLP |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| **Case Number** | 2022-2275 (Lead); -2277, -2278, -2279, -2281, -2283 |
|---|---|
| **Short Case Caption** | Beteiro, LLC v. Draftkings, Inc. |
| **Filing Party/Entity** | Hillside New Jersey LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/24/2023

Signature: /s/ Arthur A. Zorio

Name: Arthur A. Zorio

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Hillside New Jersey LLC | | Hillside (US Media) LLC, a Delaware limited liability company |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Brownstein Hyatt Farber Schreck, LLP | Pacifico Angellini | S. Craig Hemenway |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2022-2275 |
| **Short Case Caption** | Beteiro, LLC v. DraftKings Inc. |
| **Filing Party/Entity** | Appellees Betfair Interactive US LLC, TSG Interactive US Services Ltd. Corp., ODS Technologies LP |

---

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/09/2023

Signature: /s/ Megan J. Redmond

Name: Megan J. Redmond

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Betfair Interactive US LLC | | FanDuel Group, Inc.; Flutter Entertainment plc |
| TSG Interactive US Services Ltd. Corp. | | Flutter Entertainment plc |
| ODS Technologies LP | | Betfair Interactive US, LLC; FanDuel Group, Inc.; Flutter Entertainment plc |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Megan J. Redmond<br>Erise IP | Damian P. Conforti<br>Mandelbaum Barrett PC | |
| Eric A. Buresh<br>Erise IP | | |
| Carrie A. Bader<br>Erise IP | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Beterio, LLC v. DrafKings, Inc.<br>No. 21-20148 (D.N.J. filed Nov. 22, 2021) | Beterio, LLC v. Hard Rock Tristate, AC LLC<br>No. 21-20157 (D.N.J. filed Nov. 22, 2021) | |
| Beterio, LLC v. PointsBet USA Inc.<br>No. 21-20155 (D.N.J. filed Nov. 22, 2021) | Beterio, LLC v. Hillside N.J. LLC<br>No. 21-20158 (D.N.J. filed Nov, 22, 2021) | |
| Beterio, LLC v. BetMGM, LLC<br>No. 21-20156 (D.N.J. filed Nov. 22, 2021) | Beterio, LLC v. Kindred Grp, plc<br>No. 22-01536 (D.N.J. filed Mar. 18, 2022) | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2022-2275 (Lead), -2277, -2278, -2279, -2281, -2283 |
| **Short Case Caption** | Beteiro, LLC v. Draftkings Inc. |
| **Filing Party/Entity** | Kindred Group PLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/24/2023

Signature: /s/ Mark M. Supko

Name: Mark M. Supko

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Kindred Group PLC | Not Applicable | None |
| Unibet Interactive, Inc. | Not Applicable | Kindred Group PLC |
| Trannel International, Ltd. | Not Applicable | Kindred Group PLC |
| Unibet International, Ltd. | Trannel International, Ltd. | Not Applicable |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATES OF INTEREST

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF RELATED CASES ................................................. ix

INTRODUCTION ................................................................................1

STATEMENT OF THE CASE................................................................4

    I.      Beteiro's Patents and Infringement Allegations ....................4

    II.    The District Court Held the Patent Invalid Under
           35 U.S.C. § 101 and Granted Defendants' Motion to Dismiss............6

SUMMARY OF THE ARGUMENT ......................................................9

STANDARD OF REVIEW ..................................................................12

ARGUMENT ......................................................................................13

    I.      The § 101 Legal Standard ....................................................14

    II.    The Asserted Claims Are Directed to an Abstract Idea ......................15

          A.     The Asserted Claims Are Directed to Facilitating
                  Gambling Activity Based on a Bettor's Location....................16

          B.     Analogous Cases Confirm that the Asserted Claims Are
                  Directed to an Abstract Idea .....................................................20

          C.     The Asserted Claims Purport to Patent an Ineligible
                  Longstanding Commercial Practice...........................................26

          D.     The Functional, Results-Oriented Language of the
                  Asserted Claims Highlights Their Abstractness ......................32

          E.     Beteiro's Attempt to Disguise the Claims as an
                  Improvement in Computer Functionality Must Fail.................34

III.    The Asserted Claims Fail to Recite an Inventive Concept ................36

      A.    The Abstract Idea Cannot Provide the Inventive Concept .......37

      B.    The Asserted Claims Rely on Wholly Generic Computer Components to Facilitate Gambling in a Conventional Way ...........................................................................................39

      C.    The Asserted Claims and Allegations Are Unspecific and Unlike Those in *Cellspin* .........................................................45

      D.    The Asserted Claims Do Not Provide a Technological Solution to a Technological Problem.......................................46

      E.    Beteiro's Conclusory Allegations of Unconventionality and Commercial Benefits Should Be Disregarded ..................49

IV.    Beteiro's Reliance on the Patent Examiner's Statements Is Misplaced ............................................................................51

CONCLUSION ......................................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ..................................................39

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
   853 F. App'x 669 (Fed. Cir. 2021) ..............................................12

*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014).............................................................*passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ........................................46, 47, 49

*Ancora Techs., Inc. v. HTC America, Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) ..................................................35

*Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ..................................................49

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ....................................................7

*Boom! Payments, Inc. v. Stripe, Inc.*,
   839 F. App'x 528 (Fed. Cir. 2021) ..............................................41

*Bridge & Post, Inc. v. Verizon Commc'ns., Inc.*,
   778 F. App'x 882 (Fed. Cir. 2019) ..................................15, 21, 31

*Brit. Telecomm. PLC v. IAC/InterActiveCorp*,
   813 F. App'x 584 (Fed. Cir. 2020) ..............................................21

*Brit. Telecomms. PLC v. IAC/InterActiveCorp*,
   381 F. Supp. 3d 293 (D. Del. 2019)..............................................37

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ..............................................15, 41

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) .............................................*passim*

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) .................................................*passim*

*CG Tech. Dev., LLC v. Bwin.party (USA), Inc.*,
  No. 21:16-cv-00871-RCJ-VCF, 2016 WL 6089696 (D. Nev. Oct.
  18, 2016) .......................................................................................22

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
  442 F. Supp. 3d 840 (D. Del. 2020)............................................*passim*

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
  858 F. App'x. 363 (Fed. Cir. 2021) ..............................................23

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ...............................................16, 35

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  No. 12-2501(MAS)(TJB), 2013 WL 3964909 (D.N.J. July 31,
  2013) ............................................................................................52

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ..............................................*passim*

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017) .....................................................42

*Customedia Techs., LLC. v. Dish Network, Corp.*,
  951 F.3d 1359 (Fed. Cir. 2020) .....................................................40

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021) ...............................................47, 48

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .....................................................30

*Data Engine Techs. v. Google*,
  906 F.3d 999 (Fed. Cir. 2018) .......................................................36

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ...............................................31, 49

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) .....................................18, 37, 50

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
　　958 F.3d 1178 (Fed. Cir. 2020) ...........................................14, 25, 47, 51

*Elec. Power Grp., LLC v. Alstom S.A.*,
　　830 F.3d 1350 (Fed. Cir. 2016) ..................................................*passim*

*Enfish, LLC v. Microsoft Corp.*,
　　822 F.3d 1327 (Fed. Cir. 2016) ...........................................................34

*Epic Tech, LLC v. Fusion Skill, Inc.*,
　　534 F. Supp. 3d 741 (S.D. Tex. 2021) ................................................28

*Evolutionary Intel., LLC v. Sprint Nextel Corp.*,
　　137 F. Supp. 3d 1157 (N.D. Cal. 2015) ..............................................31

*Finjan v. Blue Coat Systems*,
　　879 F.3d 1299 (Fed. Cir. 2018) ...........................................................36

*Free Stream Media Corp. v. Alphonso Inc.*,
　　996 F.3d 1355 (Fed Cir. 2021) ............................................................33

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
　　204 F. Supp. 3d 1190 (D.N.M. 2016)..............................21, 23, 24, 43

*GeoComply Solutions, Inc. v. Xpoint Services LLC*,
　　No. CV 22-1273-WCB, 2023 WL 1927393 (D. Del.
　　Feb. 10, 2023) ...............................................................22, 28, 29

*Imation Corp. v. Koninklijke Philips Elecs. N.V.*,
　　586 F.3d 980 (Fed. Cir. 2009) .............................................................12

*Intel. Ventures I LLC v. Symantec Corp.*,
　　838 F.3d 1307 (Fed. Cir. 2016) .....................................27, 36, 46, 47

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
　　792 F.3d 1363 (Fed. Cir. 2015) ..........................................................21

*Interactive Wearables, LLC v. Polar Electro Oy¸*
　　501 F. Supp. 3d 162 (E.D.N.Y. 2020) ................................................53

*Joao Bock Transaction Sys., LLC v. Fid. Nat. Info. Servs., Inc.*,
　　122 F. Supp. 3d 1322 (M.D. Fla. 2015).................................................1

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
   76 F. Supp. 3d 513 (D. Del. 2014)........................................................................1

*Joao Control & Monitoring Sys., LLC v. Digit. Playground, Inc.*,
   No. 12-cv-6781 (RJS), 2016 WL 5793745 (S.D.N.Y. Sept. 30,
   2016) ....................................................................................................................1

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
   173 F. Supp. 3d 717 (N.D. Ill. 2016) ...................................................................1

*In re Killian*,
   45 F.4th 1373 (Fed. Cir. 2022) ...........................................................................26

*LendingTree, LLC v. Zillow, Inc.*,
   656 F. App'x 991 (Fed. Cir. 2016) ......................................................................20

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012)...............................................................................................15

*Move, Inc. v. Real Estate Alliance Ltd.*,
   721 F. App'x 950 (Fed. Cir. 2018) ......................................................................25

*NEXRF Corp. v. Playtika Ltd.*,
   547 F. Supp. 3d 977 (D. Nev. 2021)........................................................21, 23, 28

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) ....................................................................28

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
   696 F. App'x 1014 (Fed. Cir. 2017) ....................................................................25

*Pure Parlay, LLC v. Stadium Tech. Grp., Inc.*,
   No. 219CV00834CDSBNW, 2023 WL 349641 (D. Nev. Jan. 20,
   2023) ....................................................................................................................28

*RDPA, LLC v. Geopath, Inc.*,
   543 F. Supp. 3d 4 (S.D.N.Y. 2021) ........................................................22, 43, 52

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
   No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) ......................25, 38

*Sandbox Software, LLC v. 18Birdies, LLC*,
   No. 18-1649 (MN), 2019 WL 2524780 (D. Del. June 19, 2019)........................28

*Sanderling Management Ltd. v. Snap Inc.*,
    No. CV 21-2324-GW-JCx, 2021 WL 3161175 (C.D. Cal. May 18,
    2021) ...................................................................................................43

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) .............................................................22

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ...................................................13, 38

*SiRF Technology, Inc. v. International Trade Commission*,
    601 F.3d 1319 (Fed. Cir. 2010) ..........................................................52

*Skillz Platform Inc. v. AviaGames Inc.*,
    No. 21-cv-02436-BLF, 2022 WL 783338 (N.D. Cal. Mar. 14,
    2022) ...................................................................................................19

*In re Smith*,
    815 F.3d 816 (Fed. Cir. 2016) ............................................................28

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019) ..........................................................14

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ..........................................................36

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ...................................................16, 38

*TecSec, Inc. v. Adobe, Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020) ...........................................34, 35, 48

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) .....................................................35, 39

*Twilio, Inc. v. Telesign Corp.*,
    249 F. Supp. 3d 1123 (N.D. Cal. 2017)........................................27, 30

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ...................................................32, 40

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................37

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) .......................................................12, 14, 24, 25

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018) .................................................................27, 47

*Weisner v. Google LLC*,
    51 F.4th 1073 (Fed. Cir. 2022) ..................................................................18, 43

*WhitServe LLC v. Donuts Inc.*,
    809 F. App'x 929 (Fed. Cir. 2020) .............................................................37, 51

*WhitServe LLC v. Dropbox, Inc.*,
    Civ. No. 18-665-CFC, 2019 WL 3342949 (D. Del. July 25, 2019) ..................51

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ....................................................................29, 34

## Statutes

35 U.S.C. § 101 ...........................................................................................*passim*

## Other Authorities

Fed. R. App. P. 36 ................................................................................................3

Fed. R. Civ. P. 12(b)(6) .........................................................................2, 6, 12, 13

Howard Hickson, *Wendover Will*, GREAT BASIN COLL.,
    https://www.gbcnv.edu/howh/WendoverWill.html ...........................................29

Allan B. Solomon & Gregory D. Guida, *Riverboat Gaming:*
    *Legislation, Licensing, Site Selection, and Caselaw*, 29 J. MAR. L.
    & COM. 215 (1998) ..........................................................................................29

**STATEMENT OF RELATED CASES**

No other appeal in or from the six consolidated actions was previously

before this or any other appellate court. The following other case may be affected

by this Court's decision:

- *Beteiro LLC v. Hard Rock Tristate*, 1:21-cv-20157 (D.N.J.)

**INTRODUCTION**

The patent claims asserted by Appellant Beteiro, LLC against the Appellees, operators of online gaming platforms, are directed to the abstract concept of facilitating gambling activity based on the bettor's location—something casinos have been doing for ages. The claims recite performing this longstanding practice in an ordinary sequence, using generic components like a "communication device" and "global positioning device" to implement the abstract idea, and therefore lack any inventive concept. All of the patent claims are invalid under 35 U.S.C. § 101 as a result.

Though this conclusion is apparent from *Alice*, a patent examiner in 2018 considered the claims under a pre-*Alice* eligibility standard and allowed the claims to issue to the inventor—a prolific patent recipient and litigant who has had multiple patents invalidated under § 101.[1] The assignee of the patents, Beteiro, then asserted these claims against the Appellees and their online/mobile gaming platforms in

[1] *See, e.g.*, *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513, 522 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) (holding that patent claims were directed to abstract idea as a "conventional business practice utilized by bankers or financial institutions"); *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 725-26 (N.D. Ill. 2016) (same for abstract idea of "monitoring and controlling property"); *Joao Bock Transaction Sys., LLC v. Fid. Nat. Info. Servs., Inc.*, 122 F. Supp. 3d 1322, 1331 (M.D. Fla. 2015) (same for abstract idea of "account monitoring and authorization"); *Joao Control & Monitoring Sys., LLC v. Digit. Playground, Inc.*, No. 12-cv-6781 (RJS), 2016 WL 5793745, at *5 (S.D.N.Y. Sept. 30, 2016) (same for abstract idea of "remote surveillance or monitoring for security or control purposes").

multiple cases filed in the U.S. District Court for the District of New Jersey. The district court soundly concluded, however, that the asserted patent claims are invalid under § 101 and that Beteiro's vague and irrelevant allegations of inventiveness did not save the cases from dismissal under Rule 12(b)(6). The district court's reasoning and dismissals should be affirmed.

This is not a close case. The asserted claims' focus is on the concept of facilitating conventional gambling activity—*i.e.*, exchanging information concerning a bet—based on where the bettor is located. Beteiro does not seriously dispute this. This concept is abstract under multiple lenses used by this Court at *Alice*'s step one; for example, it is analogous to concepts previously held patent-ineligible and is a longstanding commercial practice and method of organizing human activity. As the district court put it, "Those accepting bets have *always* had to confirm that the bettor with whom they were dealing was located in a place where gambling was allowed." Appx0014-0015. Moreover, nothing in the asserted patents comes close to a transformative inventive concept sufficient to save the claims at *Alice*'s step two. Carrying out a longstanding economic practice using GPS for its conventional geolocation purpose—which is all the asserted claims do—is not inventive, and Beteiro's pleadings do not alter this conclusion. Nor do the claims solve a technical problem of any sort. The district court was thus correct to hold that

the asserted claims failed both steps of *Alice* and are invalid as a matter of law, requiring dismissal with prejudice.

Beteiro's Brief does nothing more than regurgitate the same arguments already considered and appropriately rejected below. In fact, Beteiro's appeal is most notable for the issues and arguments that it does not present—including arguments that Beteiro never made and ones it abandons on appeal. Specifically, Beteiro does not (and did not) argue that the district court should have considered elements recited in other claims (including the dependent claims) that Beteiro did not assert, or that claim construction would be material to the eligibility analysis. Nor has Beteiro ever identified what "inferences" it believes the district court should have drawn in its favor. Similarly, on appeal, Beteiro does not contest the district court's selection of one asserted claim as representative, nor does it appeal the district court's alternative holding that Beteiro's claims for willful infringement were insufficient as a matter of law. All of these issues are either forfeited or waived and cannot be raised on reply or otherwise considered by the Court. In short, there is nothing in the record or Beteiro's Brief that should lead the Court to question the district court's conclusions. Thus, the district court's orders can and should be affirmed without an opinion under Federal Rule of Appellate Procedure 36.

## STATEMENT OF THE CASE

### I.     Beteiro's Patents and Infringement Allegations

Beteiro sued each of the Appellees in separate actions in the U.S. District Court for the District of New Jersey "raising essentially the same patent infringement claims." Appx0002 n.1. Beteiro asserted infringement of four patents: U.S. Patent Nos. 10,043,341 (the "'341 Patent"); 10,147,266 (the "'266 Patent"); 10,255,755 (the "'755 Patent"); and 9,965,920 (the "'920 Patent") (the "Asserted Patents"). *See* R.1[2] in Case No. 21-20148 ("*DraftKings* Compl."); R.1 in Case No. 21-20155 ("*PointsBet* Compl."); R.5 in Case No. 21-20156 ("*BetMGM* Am. Compl."); R.1 in Case No. 21-20158 ("*Hillside* Compl."); R.1 in Case No. 22-00577 ("*Betfair* Compl."); R.1 in Case No. 22-01536 ("*Kindred* Compl."). Each of the Asserted Patents is entitled "Apparatus and Method for ***Facilitating Gaming Activity and/or Gambling Activity***." Appx0174 ('341 Patent) (emphasis added); Appx0260 ('266 Patent); Appx0087 ('755 Patent); Appx0347 ('920 Patent).

The Asserted Patents are part of the same patent family; specifically, each of the '341, '266, and '755 Patents is a continuation of the '920 Patent. *See, e.g.*, Appx0174 ('341 Patent) ("Related U.S. Application Data"). Thus the Asserted

---

[2] "R." refers to the docket entries in the proceedings below. This Brief will focus on the district court's Opinion in *BetMGM* and the underlying Amended Complaint and briefing in that case, as Beteiro does. *See* Beteiro's Corrected Opening Br. ("Br."), ECF No. 35, at 7.

Patents all share a common specification. Each of the Asserted Patents describes embodiments purporting to "allow a user to engage in gaming activity and/or gambling activity via a user communication device" when the user is in a location where the computer determines a bet is allowed. *See* Appx0224 ('341 Patent) at 28:13-15; Appx0310 ('266 Patent) at 28:20-22; Appx 0138 ('755 Patent) at 28:29-31; Appx0398 ('920 Patent) at 28:13-15. According to Beteiro, one of the express objects of the claimed invention was "to provide an apparatus and method for facilitating gaming activity and/or gambling activity which utilize global positioning technology in order to ascertain the jurisdiction in which or from which a bet is placed." Appx0624 at ¶ 33 (citing Appx0397 at 26:14-18). Beteiro alleged that Appellees infringed Claim 13 of the '341 Patent, Claim 1 of the '266 Patent, Claim 2 of the '755 Patent, and Claim 16 of the '920 Patent (the "Asserted Claims"). *See, e.g.*, Appx0642 at ¶ 78, Appx0650 at ¶ 93, Appx0655 at ¶ 106, Appx0659 at ¶ 119.[3]

The language of the Asserted Claims is substantially similar, as Appellees demonstrated in a side-by-side claim chart. *See, e.g.*, R.9-1 in Case No. 20156 at Appendix A. Appellees argued that Claim 2 of the '755 patent was representative of

---

[3] Beteiro also alleged that any infringement post-notice of the patents was "willful and deliberate." *See* Appx0650 at ¶ 88; Appx0654 at ¶ 101; Appx0659 at ¶ 114; Appx0665 at ¶ 128. The district court held that these allegations failed to state a claim for willful infringement. Appx0020 n.9. Beteiro's Brief does not challenge that holding, and it is not at issue in this appeal.

the other Asserted Claims and the district court agreed, finding that Beteiro did not meaningfully contest representativeness. Appx0008-0011.

Representative Claim 2 recites five steps for verifying a bettor's location-based eligibility in functional terms. The claim describes: (1) "detecting" information about gambling activity; (2) "generating" and "transmitting" a notification message regarding the activity to a user; (3) "receiving" a bet message that includes information regarding a bet to be placed and the location of the user; (4) "determining" whether the bet is allowed or disallowed using the location information; and (5) "processing" information for placing the bet or disallowing the bet. *See* Appx0172 ('755 Patent, Cl. 2); *see also* Appx0621 at ¶ 26.

## II. The District Court Held the Claims Invalid Under 35 U.S.C. § 101 and Granted Defendants' Motion to Dismiss

Appellees all moved to dismiss under Rule 12(b)(6) based on § 101 ineligibility and filed similar but separate briefs. *See* R.9-1 in Case No. 21-20148 (DraftKings); R.12-1 in Case No. 21-20155 (PointsBet); R.9-1 in Case No. 21-20158 (Hillside); R.9-1 in Case No. 21-20156 (BetMGM); R.7 in Case No. 22-200577 (Betfair); R.18-1 in Case No. 22-01536 (Kindred). The district court granted Appellees' motions, holding that Beteiro's Asserted Claims and allegations recited

ineligible subject matter under the two-step *Alice* framework and thus Beteiro failed to state a claim for infringement. *See* Appx0001-0021.[4]

The court agreed that Claim 2 of the '755 Patent should be treated as representative for the purposes of the eligibility analysis given the "obvious parallelism" among the Asserted Claims. Appx0010. The court recognized that Beteiro did not "present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim," *id.* (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)), failing to "even attempt to distinguish Claim 2 from the related claims in the other Patents-in-Suit," *id.*

At *Alice* step one, the district court looked to analogous prior cases and the long history of location-based gambling regulation to determine that the Asserted Claims are directed to an abstract idea. *See* Appx0013-0015. Considering the claim language, the court determined that the Asserted Claims describe "an apparatus or method for exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located," which is achieved "through a simple series of steps." Appx0013. The district court found the Asserted Claims analogous

---

[4] The district court granted BetMGM's motion to dismiss on September 7, 2022 in a written Opinion, *see* Appx0001-0021, followed by a final order, *see* Appx0022. The court then entered orders granting dismissal in each of the consolidated cases based on the same reasoning set forth in the *BetMGM* order. *See* Appx0031-0032 (Kindred); Appx0027-0028 (Betfair); Appx0023-0024 (DraftKings); Appx0025-0026 (PointsBet); and Appx0029-0030 (Hillside).

to claims invalidated by other courts "within and outside the gaming context," which confirmed that "the concept of taking action in response to location based information . . . is abstract and patent-ineligible." Appx0014 (alteration in original). Further, crediting Appellees' historical examples, the court recognized that "[t]hose accepting bets have *always* had to confirm that the bettor with whom they were dealing was located in a place where gambling was allowed." Appx0014-Appx0015. The court thus held that "verifying a prospective bettor's location-based eligibility," as depicted in the Asserted Claims, was a "fundamental economic practice" and "method of organizing human activity" that was a "long-established business practice of those who accept bets." Appx0015. The Asserted Claims are therefore abstract at *Alice* step one. *Id.* at 16.

At *Alice* step two, the court held that the Asserted Claims merely "describe[] a conventional business practice . . . executed instead by generic computer components" and thus could not survive. Appx0018. The court explained that the Asserted Claims recite "wholly generic computer implementation," *id.* (citing *Alice*, 573 U.S. at 221, 223-24), and that a "specially programmed" computer and "generically-described 'global positioning device'" could not supply the necessary inventiveness, *id.* at Appx0017 n.7. The court rejected Beteiro's reliance on *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019), emphasizing that unlike *Cellspin*, Beteiro's claims and allegations "lack[ed] any such specificity and detail"

and instead "describe[d] conventional technology, conventionally applied, using 'broad, functional language.'" Appx0018-0019 (citation omitted). To the extent Beteiro alleged "any unconventionality at all," it fatally came "from the abstract idea" itself. Appx0019.

The court likewise rejected Beteiro's argument that it must defer to the USPTO Patent Examiner concerning patent eligibility under § 101 for two main reasons: (1) the examiner's statements about the patent were not themselves evidence of the Asserted Claims' validity and need not be afforded weight; and (2) the Patent Examiner here relied on a case that predated *Alice* and thus his determination would have no bearing on the *Alice* analysis. *See* Appx0019-0020.

The district court dismissed Beteiro's Complaint with prejudice. *See* Appx0022 (Amended Order). Beteiro moved for reconsideration of the decision, which the district court denied on the merits, stating that it had "already considered and rejected Plaintiff's arguments" as to patent eligibility. *See* R.36 in Case No. 20156 at 2.

## SUMMARY OF THE ARGUMENT

As the district court correctly determined, the Asserted Claims are invalid under 35 U.S.C. § 101 as interpreted by *Alice*. As an initial matter, the claims are directed to the abstract idea of facilitating gambling activity (*i.e.*, "exchanging information concerning a bet") based on a bettor's location (*i.e.*, "allowing or

disallowing the bet based on where the user is located"). This is the correct characterization of the Asserted Claims "as a whole," as it is tethered to the claim language while capturing the overall focus of the Asserted Claims. The same cannot be said of Beteiro's proposed focus: "providing remote yet legally compliant access to wagering platforms via user communication devices and the transmission of bet messages containing bet information and position information of the device." Beteiro's characterization of the claims' focus is not commensurate with the scope of the Asserted Claims, which do not require "remote" or "legally compliant access." In any event, Beteiro's characterization of the claim also amounts to an abstract idea, despite Beteiro's attempts to import generic claim elements to make the formulation appear more technical. The district court properly adopted a "focus" of the claims similar to the one proposed by Appellees.

Turning to *Alice*'s step one, facilitating gambling activity based on a bettor's location is an abstract concept under *Alice* for several reasons, as the district court properly held. The Asserted Claims are analogous to claims that this Court and district courts have held to be abstract, including location-based claims, eligibility-verification claims, and information-organizing claims. The concept to which the Asserted Claims are directed is also analogous to the longstanding practice of casinos allowing or disallowing bets based on the location of the bettor, which confirms that the Asserted Claims are directed to an abstract idea. Moreover, the

Asserted Claims' functional language, which sets out a result with no indication of *how* it is achieved, is also a hallmark of abstract claims. Beteiro's contrary argument that the Asserted Claims are directed to an improvement in computer functionality has no support in the Asserted Patents or Beteiro's allegations, as neither source indicates an improvement of computer functionality as opposed to a mere use of computers as tools to execute conventional business practices. The district court was correct to hold the Asserted Claims directed to an abstract idea at step one of the *Alice* analysis.

At *Alice*'s step two, the Asserted Claims recite no saving inventive concept. The claims recite entirely generic implementation with conventional computer components, which fails to provide the inventive concept necessary to transform the abstract idea into a patent-eligible application. Beteiro's allegations of inventiveness rely on the use of the ineligible concept—the abstract idea of facilitating gambling activity based on where the bettor is located. It is well established, however, that the ineligible concept to which the claims are directed cannot supply an inventive concept. Likewise, Beteiro's allegations do not match the factual circumstances of *Cellspin*, 927 F.3d at 1317-18, which requires specific allegations of inventiveness concerning specific claim limitations to avoid dismissal. Beteiro again raises the "technical solution to a technical problem" argument at step two, but it again falls flat because the issue of remote gambling being uncommon in 2002 was not a

technical problem, nor do the Asserted Claims' invocation of technology developed by others constitute a solution. Finally, Beteiro's remaining allegations are entitled to no weight because they are conclusory or relate to irrelevant purported commercial benefits of the Asserted Claims. The district court was correct to find that Beteiro's Asserted Claims failed step two and that its cases should be dismissed with prejudice.

In light of the abstract nature of the Asserted Claims, the lack of any inventive concept, and the unavailing nature of Beteiro's arguments, "it is a straightforward matter to conclude" that the Asserted Claims are invalid. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014). Accordingly, the district court's well-reasoned decision dismissing Beteiro's Complaint with prejudice for failure to state a claim should be affirmed.

## STANDARD OF REVIEW

In reviewing a dismissal on Rule 12(b)(6) grounds, this Court follows the procedural law of the regional circuit. *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 984 (Fed. Cir. 2009). In the Third Circuit, review of this dismissal is *de novo. See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (applying Third Circuit procedural law).

This Court reviews a district court's ultimate conclusion on patent eligibility under § 101 *de novo. See, e.g.*, *Aftechmobile Inc. v. Salesforce.com, Inc.*, 853 F.

App'x 669, 669 (Fed. Cir. 2021). Where "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law," eligibility "can be determined at the Rule 12(b)(6) stage." *Universal Secure Registry*, 10 F. 4th at 1346 (citation omitted). This Court frequently affirms dismissals under this standard. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (eligibility under § 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion") (collecting cases).

## ARGUMENT

As the district court held, the Asserted Claims are invalid. Appx0019. Focusing on Claim 2 of the '755 Patent, which the district court agreed was representative and Beteiro does not dispute, *see* Appx0008-0011, the Asserted Claims fail under *Alice*'s two-step test. *First*, the Asserted Claims are directed to the same abstract idea: facilitating gambling activity based on a bettor's location. *Second*, the Asserted Claims lack any saving inventive concept and instead merely recite applying the abstract idea using conventional computer hardware. Beteiro's allegations of inventiveness are likewise insufficient. The Patent Examiner's allowance of the Asserted Claims under an outdated § 101 standard does not merit consideration.

# I.    The § 101 Legal Standard

To ensure that patent law does not "impede innovation more than it would tend to promote it," abstract ideas have long been held ineligible for patent protection. *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citation omitted). In *Alice*, the Supreme Court established a two-part test to determine whether a patent is invalid under 35 U.S.C. § 101 for claiming ineligible subject matter. *See id.* at 217-18. At step one, the court determines if the claims at issue are directed to an abstract idea or other excluded category. *Id.*; *see also Universal Secure Registry*, 10 F.4th at 1346 ("[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.") (citation omitted). For example, claims directed to a "fundamental economic practice" or a "method of organizing human activity" are abstract. *Alice*, 573 U.S. at 220; *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) (collecting cases) ("Claims . . . that are directed to longstanding commercial practices do not pass step one of the two-part § 101 test."). Claims that involve technology are abstract "'where the claims simply recite conventional actions in a generic way' without purporting to improve the underlying technology." *Universal Secure Registry*, 10 F.4th at 1357 (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)).

Where the claims are directed to an abstract idea, *Alice* step two requires that the claims recite an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72-73 (2012)). Transforming "an abstract idea into a patent-eligible claim 'requires more than simply stating the abstract idea while adding the words 'apply it.''" *Bridge & Post, Inc. v. Verizon Commc'ns., Inc.*, 778 F. App'x 882, 891 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 222). Rather, transformation requires "'additional features,' which must be more than 'well-understood, routine, conventional activit[ies].'" *Id.* (alteration in original) (quoting *Alice*, 573 U.S. at 225). The inquiry is not whether a claim "as a whole is unconventional," but whether the claim contains an "inventive concept" sufficient to ensure that it amounts to significantly more than a patent on the abstract idea. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

## II. The Asserted Claims Are Directed to an Abstract Idea

The Asserted Claims fail the first step of *Alice* because they are directed to facilitating gambling activity based on a bettor's location, which is a patent-ineligible abstract idea as confirmed by analogous cases, longstanding real-world commercial practices, and the claims' functional language. *See Alice*, 573 U.S. at

219. Contrary to Beteiro's repeated but vague assertions, the Asserted Claims are not directed to any improvement in computer functionality.

### A. The Asserted Claims Are Directed to Facilitating Gambling Activity Based on a Bettor's Location

The focus of the Asserted Claims is facilitating gambling activity based on a bettor's location. To determine whether claims are "directed to" an ineligible abstract idea, the Court considers their "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). "The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016); *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) ("[R]eliance on the specification must always yield to the claim language in identifying [the claim's] focus.").

The abstract concept here comes directly from the language of the claims, which recite a handful of basic steps: (1) "detecting" information about a gambling activity, Appx0172 ('755 Patent, Cl. 2) at 95:2-7; (2) "generating" and "transmitting" to a user a notification message regarding the activity, *id.* at 95:8-19; (3) "receiving" a bet message that includes information regarding a bet to be placed and the location of the user, as determined by GPS, *id.* at 95:20-34; (4) "determining" whether the bet is allowed based on the location information, *id.* at 95:35-39; and (5) "processing" information for allowing or disallowing the bet, *id.* at 95:39-42.

The specification supports Appellees' characterization of the focus of the claims, as does the Asserted Patent's title. *See, e.g.*, Appx0133 at 17:28-34. Indeed, the specification confirms that "[t]he present invention pertains to an apparatus and method for ***facilitating gaming activity and/or gambling activity***." Appx0385 at 1:29-30 (emphasis added). As explained below, this claim focus is an abstract idea.

Beteiro raises two objections to the district court's characterization of the claims' focus, but neither is viable. First, Beteiro wrongly asserts that the district court "fail[ed] to identify the so-called 'idea' it believes properly defines the inventions as claimed." Br. at 13. At the outset of its step one analysis, however, the district court expressly summarized the claimed steps as "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located," which it then refers to as "an unpatentable abstract idea." Appx0013. This alone disproves Beteiro's contention, but the Opinion goes on to similarly describe the claims' focus as the "concept of determining bet-eligibility from location-based information using conventional computers." Appx0019; *see also* Appx0015 (describing the "abstract idea" as "verifying a prospective bettor's location-based eligibility"). Beteiro's desire for a more explicit statement is formalistic, unsupported, and does not indicate any actual shortcoming in the district court's reasoning.

Second, Beteiro's competing characterization of the Asserted Claims has insufficient basis in the claim language and specification. Beteiro describes the focus as "providing remote yet legally compliant access to wagering platforms via user communication devices and the transmission of bet messages containing bet information and position information of the device." Br. at 16. This is incommensurate with the claim language—it is at once too broad and too narrow. It is broader than the claim language in that the Asserted Claims do not generally "provid[e] . . . access to wagering platforms"—the access between the computer and communication devices is assumed—but rather provide steps for exchanging certain information concerning an individual bet. *See* Appx0172 at 95:1-34. Similarly, the Asserted Claims do not address determining "legal compliance," but merely allowing or disallowing a bet using location information. *Id.* at 95:35-42.

Beteiro's formulation is also too narrow in that it emphasizes otherwise black-box limitations—the "communication device" and the "bet messages"—that the patent claims and specifications do not. *See Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) (black-box technical elements are "not enough to modify the focus of the claims"); *see also Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022) ("[T]he fact that the claims recite a number of generic elements—including a processing system, an application, and a handheld mobile communication device—does not shift their focus away from the core

[abstract] idea . . . .”). Given that the specification describes the “communication device” in entirely generic terms (*i.e.*, a combination of a CPU, ROM, RAM, an input device, and a screen, *see* Appx0091 (Fig. 3), Appx0146 at 43:57-44:16) and *never* defines or discusses the “bet message,” they are not limitations worthy of defining the overall claim focus.

Regardless, the Asserted Claims are directed to an abstract idea, even under Beteiro’s formulation of the “focus” of the alleged invention. *See, e.g.*, *CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 849-50 (D. Del. 2020), *aff’d*, 858 F. App’x 363 (Fed. Cir. 2021) (claim purportedly providing solution “to the real-world need to address the implications of differing jurisdictions and their effect on permitted game configurations” found directed to abstract idea); *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-cv-02436-BLF, 2022 WL 783338, at *13-16 (N.D. Cal. Mar. 14, 2022) (claim pertaining “to a remote server that only provides game content to a particular client device if that client device’s geolocation meets certain criteria” found directed to abstract idea).

Accordingly, because the Asserted Claims focus on facilitating gambling activity based on a bettor’s location, the district court was correct in finding that the Asserted Claims are directed to just that—“exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located.” Appx0013.

### B. Analogous Cases Confirm that the Asserted Claims Are Directed to an Abstract Idea

The district court correctly concluded that the Asserted Claims were directed to a "fundamental economic practice" or a "method of organizing human activity," Appx0016, and properly reached this conclusion by first comparing them "to those claims already found to be directed to an abstract idea in previous cases." *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 995 (Fed. Cir. 2016) (citation omitted); *see* Appx0012 ("All of these cases and others—within and outside the gaming context—confirm that 'the concept of taking action in response to location-based information . . . is abstract and patent-ineligible.'") (citation omitted).

For example, the court rightfully found *CG Technology Development, LLC v. FanDuel, Inc.* to be instructive. The claim at issue in *FanDuel* recited steps for "(1) determining the location of a mobile gaming device; (2) using a lookup table to determine the game configuration associated with the location; and (3) implementing that game configuration." 442 F. Supp. 3d at 847 (cleaned up). In an order that this Court affirmed, the *FanDuel* court granted the defendant's motion for judgment on the pleadings because the claim was "directed to the abstract idea of 'determining game configuration based on location,'" which the court held to be "a method of organizing human activity." *Id.* at 847-50. The same is true here. *See* Appx0014 ("While here Claim 2 involves steps to determine whether to allow a game to be played rather than determine how to configure it, it is clear that it too is directed

20

toward an abstract idea in much the same way: both involve 'a method of organizing human activity.'") (citing *FanDuel*, 442 F. Supp. 3d at 847).

Myriad cases decided by this Court confirm that the Asserted Claims are abstract. This Court recently affirmed a district court's determination that "incentivizing gambling tailored to a user's location" is ineligible for patent protection. *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 991-92, (D. Nev. 2021), *aff'd*, Nos. 2021-2147, 2021-2219, 2022 WL 1513310 (Fed. Cir. May 13, 2022) (cited at Appx0014). In another analogous decision, this Court affirmed the invalidation of a claim directed to the abstract idea of "authorizing handheld devices to receive streaming video based on a user's location." *See Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1238 (D.N.M. 2016), *aff'd sub nom., Front Row Techs., LLC v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017) (cited at Appx0014) (describing claim as "a method that: (i) determine[d] a handheld device user's location; and (ii) authorize[d] devices within a certain area to receive streaming video").[5] The Asserted Claims fit squarely within this assortment of abstract location-based claims.

---

[5] This Court has also held as abstract: "providing different newspaper inserts based upon the location of the individual," *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015); "providing lists of location-specific information sources to users based on their location," *Brit. Telecomm. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020); "tracking a user's computer network activity" to tailor advertisements "based on real-time information about the user and their location," *Bridge & Post*, 778 F. App'x at 884; and most

Beteiro's attempts to distinguish these highly analogous cases fail just as they did at the district court. *See* Br. at 16-21. Beteiro challenges the relevance of *FanDuel* on the basis that the Asserted Claims "include specific structural limitations such as specially programmed processors, notification messages, bet messages, [and] decision-making algorithms for placing a specific wager." Br. at 17. But the goal at step one is to find *analogous* claims, not *identical* claims, and Beteiro does not explain why these "specific structural limitations" supposedly are materially different than the "lookup table" and other conventional components claimed in *FanDuel*.

Beteiro's argument that a different district court in an earlier case declined to declare the claim at issue in *FanDuel* invalid as abstract on a motion to dismiss also falls short. *See* Br. at 17-18 (citing *CG Tech. Dev., LLC v. Bwin.party (USA), Inc.*, No. 21:16-cv-00871-RCJ-VCF, 2016 WL 6089696, at *4-5 (D. Nev. Oct. 18, 2016) ("*CG v. Bwin*"). Although *CG v. Bwin* held that a location determination step saved

---

recently, "providing information . . . based on meeting a condition," *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023).

District courts have likewise found analogous claims abstract. *See, e.g.*, *GeoComply Solutions, Inc. v. Xpoint Services LLC*, No. CV 22-1273-WCB, 2023 WL 1927393, at *1, 6-11 (D. Del. Feb. 10, 2023) (citing the *BetMGM* Opinion, holding that a patent directed to "methods for determining the location of the device a user employs when interacting with an online gaming service" was abstract); *RDPA, LLC v. Geopath, Inc.*, 543 F. Supp. 3d 4, 20-21 (S.D.N.Y. 2021) (finding "data collection and analysis" abstract where data is collected "by GPS and location tracking systems").

the claim from abstraction, Judge Andrews in Delaware later disagreed, holding that "*[d]etermining the location of a mobile gaming device*, determining the game configuration associated with that location, and implementing that game configuration are *each 'independently abstract ideas that use computers as tools*.'" *FanDuel*, 442 F. Supp. 3d at 848 (emphasis added). This Court agreed and upheld Judge Andrews' decision finding the claim abstract. *CG Tech. Dev., LLC v. Fanduel, Inc.*, 858 F. App'x. 363 (Fed. Cir. 2021). Thus, while neither decision binds this Court, the *FanDuel* order is better law in that it (1) was affirmed by this Court, (2) contains a substantially more thorough analysis, and (3) is four years more recent and thus reflects present § 101 jurisprudence. Further, after *CG v. Bwin*, this Court confirmed that a generic location-determination step is not enough to save a claim from ineligibility. *Front Row Techs.*, 697 F. App'x at 701 (affirming decision in *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190 (D.N.M. 2016)).

Beteiro's effort to distinguish *NEXRF* is likewise unavailing. Far from the only similarity between the case here and *NEXRF* being "that they relate to gambling," Br. at 20, the claim in *NEXRF* analogously involved a computer-signaled response to location information, *see NEXRF*, 547 F. Supp. 3d at 991-92. The only difference is the substance of the triggered response: whereas NEXRF's patent processed rewards and gameplay options based on location, *see id.* at 991, Beteiro's

processes bet eligibility. Beteiro does not bother to explain why this could make a difference; it does not.

Beteiro's assertion that "the Asserted Claims are directed to more than simply restricting content based on location" as claimed in *Front Row* and, instead, "are directed to a meaningful and specific protocol for providing legally compliant remote wagers," Br. at 20-21, also flounders. Aside from the fact that Beteiro does not identify the "meaningful and specific" aspects of this so-called protocol, Beteiro fails to explain why, as with *NEXRF*, the Asserted Claim are directed to anything "more" than the abstract concept identified in *Front Row*. *See Front Row*, 204 F. Supp. 3d at 1269-74 (explaining that "authorizing handheld devices to receive streaming video based on a user's location" is abstract). Put simply, none of Beteiro's attempted distinctions hold water.

Additionally, although the district court concentrated on the many analogous cases relating to location-based determinations, cases in two other similar contexts support its conclusion. First, the Asserted Claims' focus is a particular form of eligibility verification, which is just as abstract. *See* Br. at 24 (emphasizing the claims' "use of location information in allowing a remotely-placed wager to proceed (or not)"). In *Universal Secure Registry*, this Court affirmed the invalidity of abstract claims similarly directed to "receiving a transaction request, verifying the identity of the customer and merchant, [and] allowing a transaction," which it explained

"simply recite conventional actions in a generic way." 10 F.4th at 1349-50. And in *Prism Technologies LLC v. T-Mobile USA, Inc.*, this Court confirmed that a method for "permitting access to . . . requested resources," including receiving device identity data, confirming the authenticity of that data, and determining whether the device was authorized to access the requested resources, was abstract. 696 F. App'x 1014, 1017 (Fed. Cir. 2017). Similar cases abound. *See, e.g.*, *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL 794981, at *2 (Fed. Cir. Mar. 15, 2022) ("credentialing visitors and checking them in and out of an access-controlled environment" is abstract); *ShoppersChoice.com*, 958 F.3d at 1181 (holding abstract "measures that purport to increase security," such as authentication).

Likewise, the Asserted Claims' focus is a manner of collecting information and taking actions in response to that information, which is another recognized abstract category. *See, e.g.*, *Zillow, Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) (finding that claims directed to "collection of information, comprehending the meaning of that collected information, and indication of the results" are abstract); *Move, Inc. v. Real Estate Alliance Ltd.*, 721 F. App'x 950, 952-54 (Fed. Cir. 2018) (finding claims for method of searching for available real estate properties within given geographical area directed to abstract idea of "collecting and organizing information about available real estate properties and displaying this information on

a digital map that can be manipulated by the user"). This Court has "repeatedly held claims 'directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating in its normal, expected manner' to be abstract." *Zillow*, 50 F.4th at 1378 (quoting *In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022)); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("The concept of data collection, recognition, and storage is undisputedly well-known."); *Elec. Power Grp.*, 830 F.3d at 1353-54 (finding claims for method of collecting, analyzing, and displaying electric power grid data directed to abstract idea). That is precisely the case here, as the Asserted Claims merely describe collecting information, including location information, and taking actions in response to that information.

Thus, the Asserted Claims are directly analogous to invalid claims relating to (1) location-based determinations, (2) eligibility verification, or (3) organizing and responding to information, indicating that they are directed to an ineligible abstract concept.

### C. The Asserted Claims Purport to Patent an Ineligible Longstanding Commercial Practice

The district court also properly confirmed its determination that the Asserted Claims are directed to an abstract idea by considering real-world analogies, and correctly found that authorizing a bet based on the prospective bettor's location is a

"long-established business practice" of bookmakers and casinos and, "consequently, an unpatentable abstract idea." *See* Appx0015 (quoting *Alice*, 573 U.S. at 220); *see* Appx0014-0015 ("Those accepting bets have *always* had to confirm that the bettor with whom they were dealing was located in a place where gambling was allowed."). This historical observation is highly relevant to the step one inquiry, as whether claims "have an analogy to the brick-and-mortar world" helps courts determine whether "they cover a 'fundamental . . . practice long prevalent in our system.'" *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1138 (N.D. Cal. 2017) (quoting *Alice*, 573 U.S. at 219) (collecting cases); *see also buySAFE*, 765 F.3d at 1355 (concluding that a particular form of contractual relationship is "beyond question of ancient lineage"); *Content Extraction*, 776 F.3d at 1347 ("[B]anks have, for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records."); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) (finding claims "drawn to the concept of voting, verifying the vote, and submitting the vote for tabulation" to be abstract because "[h]umans have performed this fundamental activity that forms the basis of our democracy for hundreds of years"); *Intel. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding an email processing software program to be abstract

through "useful" comparisons to a "brick-and-mortar post office" and "corporate mailroom").

Numerous courts have invalidated gambling patents under *Alice*, and this Court has affirmed, where patents claim conventional gambling activity implemented with generic technology. *See, e.g.*, *In re Smith*, 815 F.3d 816, 818 (Fed. Cir. 2016) (finding claims "directed to rules for conducting a wagering game" an abstract "fundamental economic practice"); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007-08 (Fed. Cir. 2014) (finding claim directed to "managing a bingo game" abstract); *NEXRF*, 547 F. Supp. 3d at 991 (finding claim directed to "incentivizing gambling tailored to a user's location" abstract).[6] Facilitating conventional gambling activity has thus consistently been held abstract as a longstanding commercial practice.

---

[6] *See also GeoComply*, 2023 WL 1927393, at *1-11 (finding "methods for determining the location of the device a user employs when interacting with an online gaming service" abstract); *Pure Parlay, LLC v. Stadium Tech. Grp., Inc.*, No. 219CV00834CDSBNW, 2023 WL 349641, at *6 (D. Nev. Jan. 20, 2023) (finding wagering patent abstract where "method is analogous to well-known, long-standing practices in the sports betting industry"); *Epic Tech, LLC v. Fusion Skill, Inc.*, 534 F. Supp. 3d 741, 746 (S.D. Tex. 2021), *reconsideration denied*, No. 4:19-CV-2400, 2021 WL 2596433 (S.D. Tex. June 24, 2021) (patent abstract where "a human is perfectly capable of independently running a basic game of luck without taking input from a human player—in fact, that is what a casino's croupiers do every day"); *Sandbox Software, LLC v. 18Birdies, LLC*, No. 18-1649 (MN), 2019 WL 2524780, at *3 (D. Del. June 19, 2019) (finding claim "directed to the abstract idea of playing a multiplayer game and keeping track of its progress" an abstract "form of organizing human activity").

The specific brick-and-mortar examples credited by the district court highlight the abstract nature of the Asserted Claims. The Stateline Casino, straddling the border of Nevada and Utah, permitted real-money wagering on the Nevada side mere feet away from the Utah side of the casino, where no gambling was permitted. *See* Appx0015 (citing Howard Hickson, *Wendover Will*, Great Basin Coll., https://www.gbcnv.edu/howh/WendoverWill.html (last visited Sept. 6, 2022)). Casino personnel were thus required to determine, based on a potential bettor's location, if the bet could be placed. The same was true for riverboat casinos, where bets have generally not been allowed until the cruises begin. Appx0015 (citing Allan B. Solomon & Gregory D. Guida, *Riverboat Gaming: Legislation, Licensing, Site Selection, and Caselaw*, 29 J. Mar. L. & Com. 215, 217 (1998)). Beteiro itself recognizes that the industry is—and always has been—geographically regulated. *See* Br. at 36 ("As of the date of invention (and still today), different jurisdictions had different laws relating to gambling activities . . . ." (citing Appx0623-0624 at ¶ 33)). Indeed, location-based decisions are core to conventional gambling activity. *See GeoComply*, 2023 WL 1927393, at *6 (crediting the *Beteiro* district court's brick-and-mortar location verification examples and providing additional examples outside the gaming context).

Beteiro's claim that the district court's reliance on these analogies was in error misses the mark. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021), *cert.*

*denied*, 142 S. Ct. 1113 (2022) ("[T]he district court's recognition at the pleadings stage in the context of § 101 of the century-old practice . . . concerns a pertinent 'fundamental ... concept[ ] and technological development[ ] [and thus] is well supported by our precedents.'"). Beteiro argues, for example, that "[t]he Stateline Casino, by its very nature as a face-to-face environment, has no need for 'notification messages,' 'communication links,' 'bet messages,' 'communication devices,' or 'processors' for 'location information' from a 'global positioning device.'" Br. at 23.[7] Beteiro's response is essentially that these analogies are inapt *because* they are brick and mortar. *See* Br. at 22-23.

Beteiro misunderstands a fundamental aspect of the patent eligibility analysis. Courts use brick-and-mortar examples precisely for their utility in showing whether a claimed practice is a longstanding "method of organizing human activity" or "fundamental economic practice," especially where that claim merely limits the abstract idea to a particular technological environment. *See, e.g.*, *Twilio,* 249 F. Supp. 3d at 1153-54 (telecommunications claims were abstract where "[b]rick and mortar processes have enabled multi-modal communication in similar ways for years"). And it is well established that mere computerization of a longstanding

---

[7] Notably, these generic technical components merely stand in for the role of a human. *Cf. CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1372 (Fed. Cir. 2011) (claim for verifying the validity of a credit card transaction online was invalid because the "steps can be performed in the human mind, or by a human using a pen and paper").

commercial practice is insufficient to avoid abstractness. *See Bridge & Post*, 778 F. App'x at 891 (claims that "recite the performance of some business practice known from the pre-internet world" and the "steps for accomplishing this on the Internet" are "conventional'" and "unpatentable" (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)); *Evolutionary Intel., LLC v. Sprint Nextel Corp.*, 137 F. Supp. 3d 1157, 1165 (N.D. Cal. 2015), *aff'd*, 677 F. App'x 679 (Fed. Cir. 2017) (holding that a practice previously "employed in libraries, businesses, and other human enterprises with folders, books, time-cards, ledgers, and so on" was abstract where the patent-in-suit "merely computerize[d] this abstract idea, taking advantage of the conventional advantages of computers in terms of efficiency and speed").

If Beteiro's argument—which is essentially that patents claiming longstanding practices are not abstract so long as they enable that practice "beyond the confines of a physical structure," Br. at 23—prevailed, any adaptation of an existing human process could be patented by claiming performance of that process using a computer. But that is precisely the type of patent claims *Alice* was concerned about. *Alice*, 573 U.S. at 223 ("Stating an abstract idea 'while adding the words "apply it"' is not enough for patent eligibility." (quoting *Mayo*, 566 U.S. at 72)); *see also Content Extraction*, 776 F.3d at 1347-48 ("For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this

analysis, it must involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" (quoting *Alice*, 573 U.S. at 225) (alteration in original)). That Beteiro is unable to differentiate its claims from the brick-and-mortar analogies relied on by the district court—other than noting the historical examples did not involve a computer—is fatal to its argument.

### D. The Functional, Results-Oriented Language of the Asserted Claims Highlights Their Abstractness

If there were any doubt as to the abstract nature of the Asserted Claims, it is resolved by considering the claims' purely functional language. *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1356 (explaining that "the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions"). Claims that recite "functional results" but do not "sufficiently describe how to achieve these results in a non-abstract way" fail *Alice* step one. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way.").

This is all the Asserted Claims do. For example, the Asserted Claims recite "determining" and "processing," but do not describe how the "determining" and

"processing" steps are actually performed. *See id.*; *see also Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363-64 (Fed Cir. 2021) ("[T]he asserted claims do not at all describe how that result is achieved."). Likewise, the claims reference transmitting "bet messages"—something Beteiro's Brief repeatedly notes—but the Asserted Patents do not describe what a bet message is or how it is generated, let alone how it is transmitted. Indeed, Beteiro's brief fails to identify any reason why the claimed "bet message" purportedly tips the eligibility analysis in its favor; it does not. This Court has repeatedly treated "collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas." *Elec. Power Grp.*, 830 F.3d at 1353; *see also buySafe*, 765 F.3d at 1355 (noting "[t]hat a computer receiv[ing] and send[ing] information over a network—with no further specification—is not even arguably inventive" and finding claim reciting such steps directed to an abstract idea). Beteiro admits that global positioning devices were not even capable of pinpointing location with the necessary accuracy in mobile devices as of the purported date of invention (2002), *see* Br. at 29, but this did not prevent Beteiro from claiming that result. Because the claim language is purely "results-oriented," the Asserted Claims are abstract.

### E.  Beteiro's Attempt to Disguise the Claims as an Improvement in Computer Functionality Must Fail

Beteiro's attempt to shift the focus of the Asserted Claims to an improvement in computer functionality is unavailing. This Court has recognized that "claims purporting to improve the functioning of the computer itself or improving an existing technological process might not succumb to the abstract idea exception," whereas those "for which computers are invoked merely as a tool" are abstract. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quotations and alteration omitted) (quoting *Alice*, 573 U.S. at 223-25). The district court rightly concluded that the Asserted Claims "fall[] in the latter camp": they do not "purport to improve any computer or any existing technological process; instead, [the Asserted Claims] seek[] to use computers as tools to execute conventional business practices." Appx0016; *see also Yu*, 1 F.4th at 1043-44 (claims in which "conventional components perform only their basic functions" are not subject matter eligible at *Alice* step one). Beteiro does not—and cannot—allege that its invention solves a problem arising in the realm of computers or that it identifies a "specific" improvement in computer capabilities.

Beteiro's reliance on *TecSec* is misplaced. *See* Br. at 21. In *TecSec*, this Court held that the challenged claims were directed to an improvement to a "function of a computer data-distribution network," requiring specific features, including "accessing an 'object-oriented key manager' and specified uses of a 'label' as well

as encryption for the access management." *See TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1295-96 (Fed. Cir. 2020). The *TecSec* court distinguished the claims from ineligible claims that made "generic functional recitations" and used "conventional" components to carry out the abstract idea. *Id.* at 1294.

But this latter category is particularly relevant here. The Asserted Claims only invoke generic technological components (*e.g.*, "computer," "communication link," "first communication device," "second communication device," and "global positioning device"). *See* Appx0172 ('755 Patent, Cl. 2). The Asserted Claims do not recite any *improvement* to those components or any improvement to a technological process. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 772 (Fed. Cir. 2019) (claims abstract where there was "no indication that the invention . . . was intended to improve . . . particular components," and the "only improvement alleged is use of the concept of network communication to interact with . . . particular devices"). Rather, the claims merely use these generic components in a conventional way. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) ("While [the asserted claim] requires concrete, tangible components . . . the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract

idea . . . ."). If anything, Beteiro's comparison to *TecSec* emphasizes, by contrast, just how abstract the Asserted Claims are.[8]

Because the Asserted Claims invoke a computer merely as a "tool" and do not "purport to improve the Internet itself," *see Symantec*, 838 F.3d at 1321, and for all of the foregoing reasons, the claims are directed to the abstract concept of facilitating gambling activity based on a bettor's location at *Alice* step one.

### III. The Asserted Claims Fail to Recite an Inventive Concept

The Asserted Claims fail *Alice* step two notwithstanding the allegations repeated at length in Beteiro's Brief. Because the Asserted Claims are directed to an

---

[8] Beyond its unconvincing comparison to *TecSec*, Beteiro cites to additional cases with no effort to explain *how* the claims at issue in those cases are supposedly analogous to the Asserted Claims. *See* Br. at 21 (collecting cases). These cases are entirely distinct from the case at hand, and again confirm that the Asserted Claims are abstract. *See SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019) (claims were not abstract where they were "more complex than merely reciting the performance of a known business practice on the Internet" because they were "directed to using a specific technique—using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors—to solve a technological problem arising in computer networks: identifying hackers or potential intruders into the network"); *Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018) (claims were not abstract where they claimed "a specific technique" addressing "a technological problem with computers: vulnerability of license-authorization software to hacking"); *Data Engine Techs. v. Google*, 906 F.3d 999, 1008-09 (Fed. Cir. 2018) (claims were not abstract where they "require[d] a specific interface and implementation for navigating complex three-dimensional spreadsheets using techniques unique to computers"); *Finjan v. Blue Coat Systems*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) (claims not abstract where they "employ[ed] a new kind of file that enable[d] a computer security system to do things it could not do before.").

abstract idea, the pertinent question is whether the claims contain an "inventive concept" in how the abstract idea is applied. *See Alice*, 573 U.S. at 221. But Beteiro fails to show that the Asserted Claims do more "than simply describe [the] abstract method," *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014), or involve "more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347-48 (quoting *Alice*, 573 U.S. at 225). Instead, Beteiro largely relies on allegations "that the invention at issue is novel and nonconventional," which is insufficient to prevent dismissal. *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 322-23 (D. Del. 2019), *aff'd*, 813 F. App'x 584 (Fed. Cir. 2020). Likewise, Beteiro's numerous references to the purported benefits of its alleged invention are irrelevant, as even "ineligible ideas can be valuable." *WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 934 (Fed. Cir. 2020). The Asserted Claims thus fail both steps of *Alice*.

### A. The Abstract Idea Cannot Provide the Inventive Concept

The law is well established that "the abstract idea to which a claim is directed cannot supply the inventive concept." *Dropbox*, 815 F. App'x at 534. Beteiro's primary argument at step two is just that, however: it asserts that providing "a means by which interested parties can access gambling services remotely, while preserving geographic restrictions on such access" is inventive and thus patent eligible. *See* Br.

at 35 (quoting Appx0623 at ¶ 32).[9] Relying on *Dropbox*, the district court already rejected the same argument, finding that "to the extent Plaintiff alleges any unconventionality at all, it comes from the abstract idea identified at Step 1: the concept of determining bet-eligibility from location-based information using conventional computers." Appx0019.

The district court was correct. This Court has criticized such assertions and warned against conflating allegedly innovative abstract ideas with the requisite "innovation in the non-abstract application realm." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (holding that claims are still patent-ineligible where "their innovation is an innovation in ineligible subject matter"). Indeed, this Court has recognized that "both Supreme Court precedent and our court's precedent make clear that automation of a long-standing human process cannot be the inventive concept because such automation is itself an abstract idea." *Repifi*, 2022 WL 794981, at *3. Beteiro points to no alleged inventive concept beyond a computerized application of an abstract idea. *See* Br. at 36 (merely stating that, "[o]f course, the

---

[9] To the extent that Beteiro argues that it invented mobile gambling, or "[t]he concept of geolocation restrictions on such gaming platforms," *see* Br. at 27 (quoting Appx0616-0617 at ¶ 16), this allegation can be rejected as implausible to the extent it contradicts the record, *see* R.24 of Case No. 21-20156 (BetMGM's Reply Br.) at 14 n.2. But even accepted as true, Beteiro misunderstands the law: the focus is whether an inventive concept exists in the *application* of the abstract idea—not whether the abstract idea itself is innovative. *Synopsys*, 839 F.3d at 1151 ("[A] claim for a *new* abstract idea is still an abstract idea." (emphasis in original)).

benefits of the inventions, as noted in the Complaint, are conferred due to the inventive concepts as claimed, as opposed to the mere practice of the 'abstract idea' suggested by the District Court.").

### B. The Asserted Claims Rely on Wholly Generic Computer Components to Facilitate Gambling in a Conventional Way

Beteiro's second step two argument fails because the Asserted Claims rely on the application of generic computer components to implement the abstract idea of facilitating gambling based on a bettor's location. This Court has repeatedly held that claims do not recite an inventive concept where they simply recite "generic features" to implement the underlying idea. *See Affinity Labs of Tex.*, *LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262-63 (Fed. Cir. 2016); *see also Alice*, 573 U.S. at 223-24 ("Wholly generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" (quoting *Mayo*, 566 U.S. at 77) (alteration in original)). This is particularly true where the conventional components are directed to performing routine functions. *See In re TLI Commc'ns Patent Litig.*, 823 F.3d at 615 (holding that where "recited physical components behave exactly as expected according to their ordinary use," they do not constitute an inventive concept).

These principles squarely apply to the Asserted Claims. No inventive concept can be found in the individual additional elements of the Asserted Claims.

Representative Claim 2 recites a "computer," "communication link," "first communication device," "second communication device," and "global positioning device," all of which are generic components as described in the specification. These routine components perform their routine functions, *e.g.*, "processing information," "generating . . . a notification message," "initiating . . . a communication link," and "determining . . . whether the bet is allowed or disallowed using the information regarding the position or location." *See* Appx0172 ('755 Patent, Cl. 2). As such, the district court aptly determined that "[t]his is the precise sort of 'wholly generic computer implementation' and 'apply it' claim that Step 2 of the *Alice* inquiry is meant to sus out." Appx0018; *see also Customedia Techs., LLC. v. Dish Network, Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) ("[T]he invocation of 'already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional." (citation omitted)).

Further, there is nothing about the ordered combination of the claim elements that constitutes an inventive concept. The Asserted Claims recite an entirely "conventional ordering of steps" that one would expect to see when implementing the abstract idea of facilitating gambling activity based on a bettor's location using a computer. *See Two-Way Media*, 874 F.3d at 1339 (using "conventional ordering of steps . . . with conventional technology to achieve its desired result" does not

constitute an inventive concept). Indeed, the order of the steps—detecting information regarding a gambling activity, generating and transmitting a notification regarding the activity, receiving a bet message with location information, determining whether the bet is allowed or disallowed using the location information, and processing the bet accordingly—are the same steps, in the same order, that bookmakers and casinos have implemented to authorize bets for decades. *See Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir. 2021) ("[T]he order and timing of the claim elements are merely the necessary steps of executing payment escrow and so do not constitute an inventive concept."); Appx0014-15. The only difference is that the claim recites performing these steps using a computer, which is insufficient to escape abstraction. *See BSG Tech*, 899 F.3d at 1290-91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").

Beteiro's contention that the Asserted Claims involve a "specially" programmed computer fares no better. *See* Appx0172 ('755 Patent, Cl. 2); *see also* Br. at 29 ("The District Court fails to analyze the Asserted Claims in light of their novel system architecture; one which utilizes a specially programmed processor to receive bet messages from geo-located communication devices."). There is nothing inventive in programming a computer to receive, transmit, and process information.

*buySafe*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."). Rather, all computers are specifically programmed to perform their intended functions. *See Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1056 (Fed. Cir. 2017) ("[M]erely 'configur[ing]' generic computers in order to 'supplant and enhance' an otherwise abstract manual process is precisely the sort of invention that the *Alice* Court deemed ineligible for patenting.") (collecting cases). The fact that the functionality of the computer is limited to "processing information for providing for a placement of a bet on or regarding a gaming activity, a gambling activity, or a sporting event" does not render the claim inventive but merely limits the claims to a particular technological environment, which is insufficient at *Alice* step two. *Elec. Power Grp.*, 830 F.3d at 1354 ("Most obviously, limiting the claims to the particular technological environment of power-grid monitoring is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core.").

The GPS recited by the Asserted Claims is likewise unimportant to the step two analysis. Beteiro readily admits that it did not invent GPS or even an improvement to it. *See* Appx0622 at ¶ 27 ("[T]he first GPS chip to be incorporated into a mobile device with sufficient sensitivity to assess the ability of an individual to place a wager in a given jurisdiction was the GL20000 GPS Chip, which was first

used in the HP iPaq in 2005."). Rather, the Asserted Patents repeatedly demonstrate that the "global positioning device" performs nothing other than its well-understood, routine, and conventional functionality: determining the position or location of a device. *See, e.g.*, Appx0347 ('920 Patent Abstract); Appx0406 ('920 Patent) at 43:17-20, 44:37-40; Appx0407 ('920 Patent) at 46:41-44; Appx0408 ('920 Patent) at 48:28-31; Appx0409 ('920 Patent) at 50:14-17. This Court and others have repeatedly rejected arguments that use of a GPS can supply the necessary inventiveness. *See, e.g.*, *Weisner v. Google LLC*, 51 F.4th 1073, 1084 (Fed. Cir. 2022) (no inventive concept where patent claimed "generic" GPS); *Sanderling Management Ltd. v. Snap Inc.*, No. CV 21-2324-GW-JCx, 2021 WL 3161175, at *6, 9 (C.D. Cal. May 18, 2021), *aff'd*, 65 F.4th 698 (Fed. Cir. 2023) (no inventive concept where the claims recite components including a "GPS module," which "are nothing more than black-box, generic computer components"); *see also RDPA*, 543 F. Supp. 3d at 21 ("The mere use of existing GPS technology to implement a strategy for identifying individuals near a location and the analysis of such data are not sufficient to add an inventive concept to the abstract idea at the core of the Asserted Patents."). Nor does the inclusion of a generic location determination step constitute an inventive concept. *See, e.g.*, *Front Row*, 204 F. Supp. 3d at 1280; *CG Tech. Dev.*, 442 F. Supp. 3d at 849.

Moreover, the prosecution history of the Asserted Patents confirms that the use of GPS in the context of remote gambling was well-understood ***before*** the alleged invention. For example, at least three of the prior art references cited on the face of the '920 Patent describe using a global positioning device to determine a player's location for purposes of establishing jurisdiction. *See, e.g.*, Appx0347 ('920 Patent at Cover Page, "References Cited"); Appx0767 (U.S. Pat. No. 6,104,815 ("Alcorn")) at Abstract, Appx0782 (Alcorn) at 10:33-43; Appx0786-787 (U.S. Pat. App. Pub. No. 2002/0098829 ("Tendler")) at Abstract, Figure 1; Appx0790 (Tendler) at ¶ 0012; Appx0793-801 (U.S. Pat. App. Pub. No. 2002/0147049 ("Carter")) at Abstract, ¶ 0036.[10] Notably, Carter describes a location based mobile wagering system having "mobile gaming units" (e.g., a "mobile telephonic device") that "include conventional position location hardware and software" such as "global position system (GPS)" and "wireless assisted GPS[.]" Appx0800 at ¶ 0026-27. Carter claims priority to a provisional application filed more than a year before the earliest alleged priority date of the '920 Patent. Appx0798 at ¶ 0001.

Thus, the Asserted Claims do no more than recite the abstract concept of facilitating gambling activity based on a bettor's location using generic components and a conventional ordering of steps. The claims do not survive *Alice* step two.

---

[10] These references were cited in DraftKings' motion to dismiss brief. R.9-1 in Case No. 21-20148 at 29-30.

## C. The Asserted Claims and Allegations Are Unspecific and Unlike Those in *Cellspin*

Beteiro's continued reliance on *Cellspin* is misplaced. In *Cellspin*, this Court held that the district court erred in granting the defendants' motion to dismiss by not accepting as true certain allegations in the complaint relating to the claims' alleged "inventive concept." *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315-17 (Fed. Cir. 2019). The specific and detailed allegations at issue in *Cellspin* highlight that decision's inapplicability here. There, Cellspin alleged that "it was unconventional to separate the steps of capturing and publishing data so that each step would be performed by a different device," and it was inventive to "require establishing a paired connection between the mobile device and the data capture device *before* data is transmitted" and to require "use of HTTP, by an 'intermediary device' and while the data is 'in transit.'" *See id.* at 1316-17. This Court emphasized that Cellspin "specifically alleged that using HTTP at a specific location, here at the intermediary mobile device, was inventive" and that "establishing a paired connection *before* transmitting data was inventive." *Id.* at 1318.

Unlike in *Cellspin*, Beteiro failed to—and cannot—make any "plausible and specific factual allegations that aspects of the [Asserted Claims] are inventive." *See id.* at 1317. Beteiro does not plausibly allege facts demonstrating that discrete aspects of its claims disclose (1) a particular, specific structure or a particular, specific combination of steps within the Asserted Claims; (2) what structures or steps

*were* conventional; and (3) *how* the Asserted Claims allegedly differ from convention. The district court agreed, stating that, compared to *Cellspin*, "Plaintiff's claims and allegations here lack any such specificity and detail." Appx0019. Instead of supplying additional specificity, Beteiro cites wholesale from the same vague allegations with which the district court took issue and fails to assert why, specifically, such allegations point to any unconventionality. *See, e.g.*, Br. at 27-28. Indeed, most of the allegations fail to cite the claim language at all. *Cf. Symantec*, 838 F.3d at 1316 (holding claims ineligible where "the asserted claims do not contain any limitations that address" problems the specification purported to solve); *see, e.g.*, Br. at 26-43.[11] Nothing about Beteiro's claims or allegations are "specific," despite Beteiro's repeated use of the word. As such, the district court correctly held that *Cellspin* is inapplicable here.

### D. The Asserted Claims Do Not Provide a Technological Solution to a Technological Problem

Beteiro's argument that "the Asserted Claims solve the technical problem facing the industry in 2002 associated with satisfying the various legal requirements of different betting jurisdictions" likewise falls flat. Br. at 37. This argument invokes cases such as *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, where this Court held

---

[11] One noteworthy example is Beteiro's implication that GeoComply only later commercialized Beteiro's inventive application of GPS. *See* Br. at 32-34. As noted above, the District of Delaware recently held one of GeoComply's central geolocation patents invalid under § 101. *See supra* n.6.

that claims may be eligible under step two where they "describe a specific, unconventional technological solution, narrowly drawn to withstand preemption concerns, to a technological problem." 841 F.3d 1288, 1306 (Fed. Cir. 2016). This theory fails for at least two reasons.

First, Beteiro fails to identify any "technological" problem. *See cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021). The vaguely stated "problems"—*e.g.*, the "inability of casino operators to broaden their wagering client base beyond the physical walls of their brick-and-mortar venues," Br. at 36-40—have two causes according to the pleading, neither of which is technological. The first reason is that wireless gambling was not legal as of the purported date of invention, but this is a sociopolitical issue, not a technical one. *See, e.g.*, Appx0616-0617 at ¶ 16. The second is that gambling was not traditionally done online, *see* Appx0623 at ¶ 32, but this is not a "technological problem" for the same reason the Court found it was not a problem with respect to computerized voting booths, *Voter Verified*, 887 F.3d at 1385, mailrooms, *Symantec*, 838 F.3d at 1317, and banks, *Content Extraction*, 776 F.3d at 1347. Distinguishing *Amdocs*, on which Beteiro relies, this Court emphasized that where claims "only entail[] applying longstanding commercial practices using generic computer components and technology[,] such claims are ineligible under § 101." *See ShoppersChoice.com*, 958 F.3d at 1183. So too here.

Second, Beteiro never answers the question of *how* the patent solves the purported problem. *See cxLoyalty*, 986 F.3d at 1378 ("[T]he claims provide no useful guidance as to how this purported function is achieved and thus cannot be directed to a technological solution."). Again, Beteiro does not allege or assert that it invented or improved any of the technological components referenced in the Asserted Claims. The closest it comes is the "bet message," which incorporates bet and location information, but it is hard to comprehend (and Beteiro does not explain) how including two conventional pieces of information in a message is a technical advance. *See* Br. at 15. Instead, the Asserted Claims require others to invent actual "technological solutions" (*e.g.*, precise global positioning devices and smartphones) in order for the Asserted Claims to work. At most, Beteiro's Asserted Claims amount to a prediction that someday, someone, somewhere, would make remote wagering technologically possible. *See* Br. at 41 (alleging that "the very infringing scenarios in existence today were contemplated and foreseen by the inventor many years ago," and "this scenario was far from conventional as of the date of invention, as evidenced by the fact that the first iPhone was not introduced to the market until 2007, and the common 'app-store' did not exist until 2008, many years after the date of invention" (quoting Appx0625-0626 at ¶ 36)). This is exactly the type of "claiming a desirable result or function" found to be futile in *TecSec*. *See* Br. at 14 (quoting *TecSec*, 978 F.3d at 1293).

### E.    Beteiro's Conclusory Allegations of Unconventionality and Commercial Benefits Should Be Disregarded

Because Beteiro cannot point to aspects of the Asserted Claims that provide an inventive concept, it relies on bare assertions, repeated *ad nauseum* in its Complaint and Brief, that the Asserted Claims are "non-routine" and "unconventional" or provide various commercial benefits. *See, e.g.,* Br. at 19 ("[T]here can be no dispute that the use of geo-location as an integral aspect of a compliant wagering platform using bet messages from remote user devices was unconventional and non-routine as of May 2002."); *id.* at 26 ("The claims of the Asserted Patents provide . . . increased opportunity for wagering providers, increased accessibility to wagering information to wagerers, reduced fraud, and more secure transactions among wagering providers and wagerers") (quoting Appx0622-0623 at ¶ 31). Both types of allegations fail.

First, Beteiro's conclusory statements that the claimed technology offers an improvement over the prior art, *see, e.g.*, Br. at 26 (quoting Appx0622-0623 ¶ 31), with citations to irrelevant cases,[12] is not enough to save the Asserted Claims. *See*

---

[12] Mirroring its approach to the step one analysis, Beteiro cites to entirely dissimilar cases with no analysis of why those cases support its conclusion. *See* Br. at 26 ("Such inventions satisfy the threshold requirement of 35 U.S.C. § 101 and are plainly patent eligible." (citing *Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301-02 (Fed. Cir. 2016))). These cases bear no similarity to the case here, which involves wholly generic computer implementation.

*Zillow*, 50 F.4th at 1379 ("IBM has not made plausible and specific allegations that any aspect of the claims is inventive."). For example, Beteiro repeatedly labels its claimed "central processing computers" as "unconventional" but fails to plead what computers were "conventional" in 2002 or why a "conventional" computer could not make a basic determination whether to accept an out-of-jurisdiction bet in 2002. *See* Br. at 29 ("The communication device unconventionally transmits bet messages and is equipped with a global positioning device."); *see also id.* (labeling the "practice of determining whether a bet should be accepted based upon the GPS data received via a bet message from a communication device" as "unconventional"); *id.* (labeling "the reference to jurisdictional gaming laws in combination with GPS data in assessing whether or not to accept a given remotely-placed wager" as "inventive"); *id.* (labeling the "system architecture" as "novel"). The best Beteiro does in this regard is explaining that mobile gambling was not prevalent in 2002 and became more prevalent thereafter, *see* Br. at 27, but the district court appropriately ignored these allegations in light of Beteiro's allegations that online gambling was not legal until 2006—an extreme example of mistaking correlation for causation. As a result, Beteiro's unsupported adjectives are entitled to no weight. *See Dropbox*, 815 F. App'x at 538.

Similarly, Beteiro's many allegations about the alleged benefits provided by the Asserted Claims are irrelevant to inventiveness. Beteiro references, for instance,

"increased opportunity for wagering providers" or "making a gaming and/or gambling experience more interesting, more challenging, and/or more exciting." Br. at 34-35. Even assuming these benefits flow from the specific steps of the Asserted Claims, they are not relevant at step two, because this Court has explained that even "ineligible ideas can be valuable." *WhitServe*, 809 F. App'x at 934.

For these reasons, the district court correctly held that the Asserted Claims fail both steps of *Alice* and are thus invalid. Because Beteiro's allegations were futile and Beteiro never argued for an opportunity to amend, the dismissal with prejudice was sound.

## IV. Beteiro's Reliance on the Patent Examiner's Statements Is Misplaced

Finally, Beteiro places significant, and unfounded, reliance on statements by the patent examiner concerning § 101 eligibility. *See* Br. at 43-50. It is indisputable that the validity of issued patents is within the purview of the Court and that the examiner's findings are not binding. This Court has repeatedly invalidated patents that have been examined and allowed by the Patent Office. *See, e.g.*, *ShoppersChoice.com*, 958 F.3d at 1183 (rejecting argument that patent was not invalid as abstract because the application "'sailed through' the United States Patent and Trademark Office"); *buySAFE*, 765 F.3d at 1352-55 (affirming lower court's grant of judgment on the pleadings based on § 101); *WhitServe LLC v. Dropbox, Inc.*, Civ. No. 18-665-CFC, 2019 WL 3342949, at *7 (D. Del. July 25, 2019), *aff'd*,

854 F. App'x 367 (Fed. Cir. 2021) ("[C]ourts regularly find patents ineligible under § 101 even though those patents had been previously examined and allowed by the USPTO.").

Beteiro's arguments that the Asserted Claims' "eligibility under 35 U.S.C. § 101 was central to the[ir] prosecution," Br. at 43, is belied by the patent examiner's statements themselves. The Notices of Allowability cite only *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319 (Fed. Cir. 2010), which "predates [*Alice*] and applied a different test for patentability under Section 101." *RDPA*, 543 F. Supp. 3d at 24 n.4; *see* R.24-1 in Case No. 21-20156 at Ex. 5. In any event, contrary to the patent examiner's apparent understanding, "*SiRF* did not hold that the mere fact that GPS-systems were involved in a patent would, on its own, render otherwise unpatentable subject matter patentable." *RDPA*, 543 F. Supp. 3d at 24. Instead, in *SiRF*—unlike here—"the calculations and variables at the core of the claimed process could 'exist only with respect to a *particular* GPS receiver that receives the [GPS] satellite signals.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, No. 12-2501(MAS)(TJB), 2013 WL 3964909, at *8 (D.N.J. July 31, 2013), *aff'd*, 776 F.3d 1343 (Fed. Cir. 2014) (emphasis in original). Here, the Asserted Claims merely use a generic GPS for providing location information that could be determined by other means, such as cellular triangulation. Thus, the examiner's analysis does not deserve "any weight." *See Interactive Wearables, LLC*

*v. Polar Electro Oy*¸ 501 F. Supp. 3d 162, 183 (E.D.N.Y. 2020). The claims here are ineligible under § 101, and the patent examiner's statements fail to save them from invalidation.

## CONCLUSION

For these reasons, the Court should affirm the district court's decision that the Asserted Claims are invalid under 35 U.S.C. § 101 and affirm the dismissal with prejudice of the multiple actions.

Dated this 23rd day of June, 2023.

By: */s/Patrick B. Hall*
Patrick B. Hall
Evan M. Rothstein
ARNOLD & PORTER KAYE
SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO  80202-2569
Telephone:  (303) 863-1000
Evan.Rothstein@arnoldporter.com
Patrick.Hall@arnoldporter.com

***Counsel for Defendant-Appellee
BetMGM, LLC***

_/s/ Arthur A. Zorio_
(consent given 06/22/2023)
Arthur A. Zorio
BROWNSTEIN HYATT FARBER
SCHRECK LLP
5520 Kietzke Lane
Suite 110
Reno, NV 89511
Telephone:  (775) 324-4100

**_Counsel for Defendant-Appellee
Hillside New Jersey LLC_**

_/s/ Megan J. Redmond_
(consent given 06/22/2023)
Megan Joanna Redmond
Caroline A. Bader
Eric Allan Buresh
ERISE IP, P.A.
7015 College Boulevard
Suite 700
Overland Park, KS 66211
Telephone:  (913) 777-5600
megan.redmond@eriseip.com
carrie.bader@eriseip.com
eric.buresh@eriseip.com

**_Counsel for Defendant-Appellees
BetFair Interactive US LLC, TSG
Interactive US Services Ltd. Corp.,
ODS Technologies LP_**

| | |
|---|---|
| /s/     Mark M. Supko | /s/     Jared W. Newton |
| (consent given 06/22/2023) | (consent given 06/22/2023) |
| Mark Michael Supko | Charles Kramer Verhoeven |
| CROWELL & MORING, LLP | QUINN EMANUEL URQUHART & |
| 1001 Pennsylvania Avenue NW | SULLIVAN, LLP |
| Washington, DC 20004-2595 | 50 California Street |
| (202) 624-2500 | San Francisco, CA 94111 |

/s/     Mark M. Supko

(consent given 06/22/2023)
Mark Michael Supko
CROWELL & MORING, LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595
(202) 624-2500

Molly A. Jones
CROWELL & MORING, LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
(415) 986-2800

**Counsel for Defendants-Appellees**
**Kindred Group PLC, Trannel**
**International, Ltd.,**
**Unibet International, Ltd., and**
**Unibet Interactive, Inc.**

/s/     Jared W. Newton

(consent given 06/22/2023)
Charles Kramer Verhoeven
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street
San Francisco, CA 94111
Telephone:  (415) 875-6600
charlesverhoeven@quinnemanuel.com

Jared Weston Newton
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
9th Floor
1300 I Street NW
Washington, DC 20005
Telephone:  (202) 538-8108
jarednewton@quinnemanuel.com

**Counsel for Defendant-Appellee**
**PointsBet Inc.**

  */s/ Jamie R. Lynn*
(consent given 06/22/2023)
George Hopkins Guy, III
BAKER BOTTS LLP
1001 Page Mill Road
Building One
Palo Alto, CA 94304
Telephone:  650.739.7500
hop.guy@bakerbotts.com

Jamie Roy Lynn
BAKER BOTTS LLP
700 K Street, NW
Washington, DC 20001
Telephone:  202.639.7700
Jamie.lynn@bakerbotts.com

Robert Lawrence Maier
BAKER BOTTS LLP
45th Floor
30 Rockefeller Plaza
New York, NY 10112
Telephone:  (212) 408-2500
Robert.Maier@bakerbotts.com

Clarke Stavinoha
BAKER BOTTS LLP
2001 Ross Avenue
Dallas, TX 75201
Telephone:  214.953.6500
Clarke.stavinoha@bakerbotts.com

***Counsel for Defendant-Appellee
DraftKings Inc.***

## Certificate of Compliance

This Brief complies with the type-volume limitation of Federal Circuit Rule 32(b). This Brief contains 12,761 words, excluding those portions of the brief exempted by Federal Circuit Rule 32(b)(2). This Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 14-point Times New Roman font.

By: */s/Patrick B. Hall*
Patrick B. Hall

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 23, 2023, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

By: */s/Patrick B. Hall*
Patrick B. Hall